STATE, *ex rel.*, *v.* BUTCHER.

(*Knoxville.* October 25, 1894.)

WORK-HOUSE LAW. *Repeal of special Act for Knox County.*

The general Act of 1891, Chapter 123, providing one universal plan or system for organization and management of county work-houses, and covering the entire subject-matter of legislation, and containing provisions radically different in many material particulars from those of all earlier statutes, and embodying an express repeal of certain general statutes on the subject, and a declaration of repeal of all other statutes in conflict with its provisions, operates to repeal, by implication, the special local Act of earlier date, providing a radically different method for the management of the work-house of Knox County.

Acts construed: Acts 1891, Ch. 123; Acts 1887, Ch. 184.

Cases cited: Poe *v.* State, 85 Tenn., 495; The Druggist Cases, 85 Tenn., 450; Cole Manufacturing Co. *v.* Fall, 92 Tenn., 607; Durham *v.* State, 89 Tenn., 728; State *v.* Wilson, 12 Lea, 246; Mayor *v.* Dearmon, 2 Sneed, 104, 120; Willaford *v.* Pickle, 13 Lea, 672; State *v.* Bank, 16 Lea, 111.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. JOSEPH W. SNEED, Sp. Ch.

WALTER M. COCKE for Relator.

COMFORT & SPILMAN for Butcher.

WILKES, J. This is a bill by the relator, a citizen of Knox County, under Section 4146 of the

Code (M. & V.), to test the right of respondent, Butcher, to hold the office of superintendent of the work-house of Knox County. An answer was filed by respondent, and the relator set the cause for hearing upon the bill and answer.

On the hearing, the Special Chancellor, J. W. Sneed, was of opinion, and decreed, that the respondent is the rightful incumbent of the office of superintendent of the work-house of Knox County, and the bill was dismissed at the cost of the relator. He has appealed, and now insists that the Chancellor erred in holding that the Act of 1891, Chapter 123, under which relator was elected, repealed the Act of 1887, Chapter 184, under which the relator claims the superintendent should have been elected.

The question submitted to the Court is one purely of law, to be determined by the construction of the two statutes referred to, as well as others relating to the work-house system.

The Code, § 5410 (M. & V., § 6256), conferred on the County Courts of the several counties of the State authority to purchase sites and build and establish work-houses, and adopt rules and regulations for their government and management.

The Act of 1875, Chapter 83, provided a general system for the regulation and management of work-houses. By Section 10 of this Act it was provided that the superintendent should be elected and his compensation fixed by the Quarterly Court, and in case of the failure of the Court to elect,

by Section 12 the County Jailer was made superintendent *ex officio.*

It was further provided by that Act that inmates should have a credit of twenty-five cents for each day's work of ten hours. This general Act was amended by the Act of 1883, Chapter 23, which elaborates the provisions of the former Act for hiring out the convicts, and requires that they shall remain under the care and control of the superintendent while hired out. A special Act was passed in 1887, being Chapter 184, providing that the superintendent of the work-house in Knox County shall be elected by the qualified voters of said county, and hold his office for a term of two years, the election to occur at the same time with the regular county elections. · This is a special Act, and relates only to Knox County. The duties required of the superintendent are substantially those prescribed in the Acts of 1875 and 1883, with some additional provisions, among others, that the superintendent should not, directly or indirectly, be a party to a contract for feeding the prisoners, and should receive out of the county treasury a salary of $1,200 per annum, and be subject to the orders of the County Court. The only important changes made by this Act from the general system existing previously were that the superintendent was elected by the people instead of the County Court, and his salary was fixed by statute instead of by the County Court.

This Act repeals no part of the former Acts, and does not refer to them in any way.

The next Act is that of 1891, Chapter 123, being a general Act for the establishment and management of work-houses throughout the State. The general provisions of this Act are, in some respects, the same as the Acts of 1875 and 1883, but, in other respects, are radically different, and, by express reference, it repeals both of the former Acts, as well as all other Acts and laws and parts of laws in conflict with the Act passed, but without specifying any other.

It is now insisted that this Act is inconsistent with the Act of 1887, and, by necessary implication, repeals it, and it is intended thereby to establish a uniform system of work-houses in all counties of the State. By the Act of 1891, the work-houses are put under the control and management of a Board of Work-house Commissioners, to be elected by the County Court, and it becomes the duty of this board to elect or appoint a superintendent, removable at their pleasure, and all necessary guards and other employes, and generally to regulate and control that department. It changes the credit to be allowed the convict for a day's work from twenty-five cents to forty cents, and gives the commissioners authority to allow good time to convicts, and to discharge them for ill health, on the certificate of a physician, or whenever they deem it best for the interest of the institution.

It is argued that these provisions are intended to apply to all work-houses and convicts confined therein throughout the State, and that they cannot be applied to Knox County, under the Act of 1887, and, hence, the Act of 1887 is repealed by necessary implication.

Comparing these several Acts, it is insisted ·there is no good reason why the Act of 1887, Chapter 184, cannot co-exist with the Act of 1891, as it did with the Acts of 1875 and 1883. It is conceded the details of the Act of 1891 are, to some extent, different from those of the former Acts, but the general objects and provisions are the same.·

By the Act of 1891, as well as by the Acts of 1875 and 1883, the Legislature intended to provide a general system for work-houses. By the Act of 1887, the Legislature intended to make a special provision in regard to the superintendent of the Knox County work-house.

It is further insisted that the Act of 1887 was a special Act, relating to Knox County, and if the Legislature had intended to repeal it by the Act of 1891, it would have been so expressly provided, and, further, that being a special Act, a general law passed subsequently will not repeal it by mere implication; and this is the general rule of law. See authorities collated in 23 Am. & Eng. Ency. Law, 422; Endlich on Statutes, 227.

It is said we have no express adjudication upon this question of a repeal of a special Act by a general law, but it is conceded that our cases are

State, *ex rel., v.* Butcher.

uniformly to the effect that repeals by implication
are not favored, and an Act will not be held to
repeal another Act by implication unless it clearly
appears that the two Acts cannot stand together,
and the repugnancy between the two Acts must
be plain and unavoidable.

In *Poe* v. *The State*, 1 Pickle, 495, it is held
that a statute inconsistent with, and embracing the
entire subject-matter of, a former statute, repeals
it either with or without a repealing clause. See
also *The Druggist Cases*, 1 Pick., 450; *Cole Man-
ufacturing Co.* v. *Fall*, 8 Pickle, 607. And this is
true even when material provisions of the former
statute are omitted. *State* v. *Terrell*, 2 Pickle, 523.

It is also held that an implied repeal results
from an enactment the terms and necessary op-
erations of which cannot be harmonized with the
terms and necessary effect of an earlier Act. Suth-
erland on Statutory Construction, Sec. 138; *Dur-
ham* v. *State*, 5 Pickle, 728.

In Endlich on Interpretation of Statutes, Sec.
231, p. 310, it is said: "An intention to super-
sede local and special Acts may be gathered from
the design of the Act to regulate by one system
or provision the entire subject-matter thereof, and
to substitute for a number of detached and vary-
ing enactments one universal and uniform rule
throughout the State. Accordingly, it has been
held that statutes fixing the terms of officers in
certain counties are to be deemed repealed by im-
plication by a general statute fixing the terms of

officers of that class throughout the State." Page 311. See also *State* v. *Wilson*, 12 Lea, 246; *Mayor* v. *Dearmon*, 2 Sneed, 104, 120; *Willaford* v. *Pickle*, 13 Lea, 672; *State* v. *Bank*, 16 Lea, 111.

The evident purpose of the Act of 1891 was to provide one general system for work-houses throughout the State upon one uniform plan. It is repugnant and inconsistent with the Act of 1887,. in that the, former gives the control of the work-house to the County Court and superintendent, while the latter gives it to the Commissioners. The full control given by the Act of 1891 to the Commissioners is entirely inconsistent with the control given by the Act of 1887 to the superintendent.

By the Act of 1887, the Superintendent is a county officer, independent of the Commissioners, and holding his office not by their selection, and removable at their discretion, but under an election by the people, and for a definite term of two years. Convicts throughout the State, under the Act of 1891, are credited for their work at the rate of forty cents per day, while, under the Act of 1887, those confined in the Knox County work-house could only have credit for twenty-five cents per day. Under the Act of 1891, they are entitled to credit for good time, and to be discharged for sickness in certain cases and at the discretion of the Commissioners, none of which provisions are in the Act of 1887, and hence could not apply to prisoners confined in the Knox County work-house.

We think there is such inconsistency and repugnancy between the two Acts that the latter Act of 1891 must be held to have repealed the Act of 1887, and respondent, being elected under the Act of 1891, was the rightful incumbent of the office when this bill was filed, and could not be removed therefrom, and the decree of the Chancellor is affirmed, and bill dismissed at cost of the relator.