## LOUIS BALDEN *v.* STATE.[1]

### (*Nashville.*   December Term, 1909.)

1. **GRAND JURY.** Members may be selected from panel drawn
   and furnished by the jury commissioners, and may be desig-
   nated by name by the judge of the criminal court of Davidson
   county.

   The power of the judge of the criminal court of Davidson county,
   existing under the fourth section of Acts 1841-42, ch. 52, estab-
   lishing said court, with the machinery necessary for such court,
   complete in all its details, to appoint, from the body of said
   county, thirty-seven qualified men to attend said court and serve
   as jurors, and to appoint a sufficient number of talesmen or
   veniremen to attend for jury service, was superseded, suspended,
   or made inoperative by Acts 1901, ch. 124, creating a board of
   jury commissioners for said county; and, by the fourth section,
   requiring the board to select a list of names of men to serve as
   jurors, whose names shall be put in a jury box; and, by the fifth
   section, requiring said jury commissioners to draw from the jury
   box the number required by. law for the grand and petit juries
   for each term of the courts, because the later act is manifestly
   inconsistent with and repugnant to the earlier act in this par-
   ticular; but the power of said judge under the said fourth sec-
   tion of the earlier act to designate by name thirteen qualified
   persons to serve as a grand jury, or to designate a larger panel,
   and from the same to select the required number of thirteen,
   is not superseded, suspended, or made inoperative by the fifth
   section of said later act requiring that from the said panel so
   drawn the grand and petit juries shall be made up, "as now pro-
   vided by law," because there is no unavoidable inconsistency
   and repugnancy between the two acts in this particular. (*Post,
   pp.* 708-724.)

---

[1] For note on organization of grand jury, see State, ex rel. Dunn,
v. Noyes (Wis.), 27 L. R. A., 776.

Balden v. State.

Code cited and construed: Sec. 5827 (S.); sec. 4791 (M. & V.); secs. 4015, 4253 (T. & S. and 1858).

Acts cited and construed: Acts 1841-42, ch. 52, sec. 4; Acts 1901, ch. 124, secs. 1, 4, and 5.

Case cited and approved: Harris v. State, 100 Tenn., 289.

2. **STATUTES. Repeals by implication are not favored, and re-pugnancy must be irreconcilable to operate as a repeal by im-plication.**
The repeal of statutes by implication is not favored, and the re-pugnancy between the older and later statutes must be plain, unavoidable, and irreconcilable, in order to operate as a repeal by implication. (*Post, pp.* 717, 718.)

Cases cited and approved: Fisher v. Baldridge, 91 Tenn., 420; Blaufield v. State, 103 Tenn., 600; McCampbell v. State, 116 Tenn., 105; Railroad v. Railway, 116 Tenn., 515; Carroll v. Grif-fith, 117 Tenn., 500; Railroad v. Byrne, 119 Tenn., 315.

3. **SAME. Same. Inconsistent statute embracing entire subject-matter of a prior statute renders it inoperative.**
A statute inconsistent with, and embracing the entire subject-matter of, a prior statute, repeals it by implication, or, more accurately speaking, renders the prior statute inoperative during the life or existence of such later statute. (*Post, pp.* 718, 719.)

Cases cited and approved: Insurance Co. v. Taxing District, 4 Lea, 648; Poe v. State, 85 Tenn., 495; Terrell v. State, 86 Tenn., 523; Rodemer v. Mitchell, 90 Tenn., 65; State, ex rel., v. Butcher, 93 Tenn., 679; Chattanooga v. Neely, 97 Tenn., 527.

4. **SAME. Same. Same. Implied repeal operates only to the extent of the repugnance, where the later statute does not em-brace all of the former statute, and does not substitute a new system.**
It is well settled that where the later statute does not cover or embrace all of the provisions of the earlier one, and does not

122 Tenn—45

Balden v. State.

manifest a clear and unmistakable intention to provide and substitute a new system for the old, the provisions of the earlier act not clearly covered by the later one are unaffected and still in force, and the repeal operates only to the extent of the repugnance and conflict. (*Post, p.* 721.)

Cases cited and approved: Cate v. State, 3 Sneed, 120; Hockaday v. Wilson, 1 Head, 114; Frazier v. Railroad, 88 Tenn., 163, 166; Iron Co. v. Pace, 89 Tenn., 707; Durham v. State, 89 Tenn., 730; Bailey v. Drane, 96 Tenn., 19.

5. **GRAND JURY.** Irregularity in judge's failure to compare names on slips with list does not invalidate action of grand jury, when.

The purpose of the jury commissioners statute (Acts 1901, ch. 124, sec. 5), in providing that the judge shall first compare the lists contained in the jury commissioners' report, which is filed with the clerk of the court, with the names on the slips delivered in court by the chairman of the board, which, if they correspond, shall constitute the panel of grand and petit jurors for the term, is to enable the court to see that the list reported to it and summoned corresponds with the names on the slips; and where there is no averment and showing that the names did not so correspond, the accused cannot avail himself of the irregularity in the failure of the judge to compare the list with the names on the slips, so as to affect the composition and action of the grand jury, especially since the statute provides, in its 17th section, that, in the absence of fraud, no irregularity with respect to the provisions of the act shall affect the validity of any action of a grand jury, if the act has been substantially complied with. (*Post, pp.* 725, 726.)

Acts cited and construed: Acts 1901, ch. 124, secs. 5 and 17.

6. **JURY COMMISSIONERS LAW.** Presumption that report was filed and properly indorsed, in absence of averment to contrary.

It must be assumed that the report of the jury commissioners was filed in the office of the clerk of the court and properly in-

Balden v. State.

dorsed as required by the statute, in the absence of averment and showing to the contrary. (*Post, p.* 726.)

Acts cited and construed: Acts 1901, ch. 124, sec. 5.

7. **SAME.** Same. **Failure to spread report on minutes is a mere irregularity not prejudicial to accused.**

The report of the jury commissioners giving the names of the panel of jurors for the term, when filed in the office of the clerk of the court and properly indorsed by him as required by the statute, becomes a record of the court, and the mere fact that it was not spread upon the minutes of the court is a mere irregularity which could not in any wise prejudice the accused. (*Post, p.* 726.)

Acts cited and construed: Acts 1901, ch. 124, sec. 5.

8. **GRAND JURY.** Irregularity in court order upon jury commissioners for excessive number of jurors does not affect validity of action of grand jury.

A court order directing the jury commissioners to furnish the court five hundred names from which to select the grand and petit juries for the ensuing term substantially complies with Acts 1901, ch. 124, sec. 5, requiring the court, by order on the minutes, to designate the number of juries and additional and extra jurors who shall be in attendance on the court, since the number of jurors is fixed by law, and it is a mere matter of calculation to determine how many jurors and additional and extra jurors are included in the order, so that any irregularity was cured by section 17 of said act, providing that, in the absence of fraud, no irregularity as to the provisions of the act shall affect the validity of any action of the grand jury, if the act has been substantially complied with. (*Post, pp.* 726, 727.)

Acts cited and construed: Acts 1901, ch. 124, secs. 5 and 17.

FROM DAVIDSON.

Appeal in error from the Criminal Court of David-son County.—W. M. HART, Judge.

JAMES B. NEWMAN and J. H. ZARECOR, for Balden.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted in the criminal court of Davidson county for the larceny of a pistol, of the value of fifteen dollars. He filed his plea in abatement, which was demurred to by the State. The demurrer was sustained, and the plea in abatement was accordingly disallowed. The case was thereupon tried on its merits, and the plaintiff in error was found guilty of petit larceny, and sentenced to one day's confinement in the county workhouse. He filed his motion for new trial, which was overruled. He thereupon appealed to this court, and has here assigned errors.

The errors assigned are upon the action of the trial judge in sustaining the demurrer to the plea in abatement. This plea was filed in due time, and presented the following objections to the indictment:

"First.   Because the thirteen members constituting the grand jury which found the alleged indictment in this case were appointed by the judge of the criminal court of Davidson county, Tennessee, and not drawn from a box or other suitable receptacle by a child under ten years of age, as required by law.

"Second.   Because the thirteen members constituting the grand jury which found and returned the alleged indictment in this case, to wit, B. F. Cook, W. J. Booth, J. M. Lanier, George Enhaus, John Woods, J. L. Carney, J. C. Baker, E. B. Parkerson, R. P. Hutton, John Bosworth, W. H. Blair, N. B. Hitt, and Everett Creech, were appointed by the judge of the criminal court of Davidson county from the panel of grand and petit jurors, consisting of five hundred names drawn by the jury commissioners of said county from the jury box for the January term, 1910, of said court, pursuant to an order entered in Minute Book 3, page 40, of said criminal court, by the judge thereof, and filed with the clerk of said court, who duly had summoned all of said five hundred persons so drawn to be present on the first day of said term.   Said panel of five hundred jurors was regularly summoned by the sheriff of said county, and in attendance on the first day of said term of said court, and said judge from said panel of five hundred jurors appointed said thirteen men as the grand jury for said term, without directing the names of all said jurors—five hundred—in attendance to be written on scrolls and placed in a box or other suitable receptacle, and

the first thirteen drawn out by a child under ten years of age, to be the grand jury for said term.

"Third.   Because the rule or order under and by which said panel of grand and petit jury was drawn from the jury box by the jury commissioners, entered by said judge in Minute Book 3, page 40, of said criminal court, in words and figures as follows:  'Order of Court. It is ordered by the court that the jury commissioners of Davidson county, Tennessee, furnish this court with five hundred names from which to select the grand and petit jury for the ensuing January term, 1910, which convenes first Monday in January, 1910,' does not designate the number of juries and additional and extra jurors who shall be in attendance at the January term of said court, as required by law.

"Fourth.   Because the slips or scrolls upon which were written the five hundred names taken from the jury box by the board of jury commissioners for the January term, 1910, of said court, were not placed in a sealed envelope, safely kept, and delivered by the chairman of said board in open court to the judge of said court on the first day of said term, and the said judge failed to compare the list contained in the report filed by the jury commissioners with the clerk of said court with the names on the slips or scrolls delivered in open court by the chairman of the board of jury commissioners, to ascertain if they were the same, and said report so filed with the clerk was never spread upon the minutes of said court."

The grounds of demurrer were, first, that the facts set out in the plea were insufficient in law to abate the indictment; and, secondly, that these facts show that the grand jury was organized as provided by law.

The controversy arises out of the fact that by chapter 52, Acts 1841-42, there was established a criminal court for Davidson county, which contained, in section 4, a peculiar provision as to the selection of grand and petit juries. That section is as follows:

"That the judge of said court shall from time to time appoint a grand jury and two petit juries to attend said court at its respective regular and special terms, and the said jury and the witnesses who shall attend said court, shall be entitled to the same compensation, and be subject to the same rules and regulations, and possess the same qualifications, as now provided by law in regard to jurors and witnesses in the circuit court."

The same provision was carried into the Code of 1858 as to the said court, and is found in section 4253 of that publication.

The method of selecting grand juries in criminal courts generally and in circuit courts having criminal business is thus laid down in section 4015 of the Code of 1858 (Shannon's Code, section 5827: "To form the grand jury, the court shall direct the names of the jurors in attendance to be written on scrolls, and placed in a box or other suitable receptacle and drawn out by a child under ten years of age, and the thirteen jurors

whose names are first drawn shall be a grand jury for the term."

It is insisted by counsel for plaintiff in error that section 4, Acts 1841-42, above mentioned, was repealed by necessary implication by chapter 124, Acts 1901. On the other hand, it is contended by counsel for the State that section 4 referred to was repealed only so far as it was in necessary conflict with the act of 1901.

In order to a proper understanding of the question, it is necessary to state that section 4, Acts 1841-42, was construed by this court, in the case of *Harris* v. *State*, at the December term, 1897, reported in 100 Tenn., at page 289, 45 S. W., 438.

It appears from that case that Harris appealed to this court from a death sentence for the crime of murder imposed by the criminal court of Davidson county. One of the matters assigned as error was that the judge of the criminal court had selected and appointed the grand jury. The court held that under the statute in question "it was entirely competent for the judge of the criminal court of Davidson county to designate by name thirteen qualified persons to serve as a grand jury, or he could designate a larger panel, and from them select the required number of thirteen." It should be noted that in the body of the opinion the court in terms, by an evident slip of the pen, refers to Acts 1853-54, c. 13, as the act creating the criminal court of Davidson county. The latter is an act creating the criminal court of Shelby county, and section 5 of that act

is an exact copy of section 4 of the Act of 1841-42, which creates the criminal court of Davidson county. This clerical error, therefore, does not affect the force of the holding of the court.

It may be considered as settled, therefore, that at the time of the passage of Acts 1901, c. 124, it was "provided by law" that in the criminal court of Davidson county the grand jury should be appointed by the judge of that court; that is to say, it was competent for the judge to designate by name thirteen men who should constitute the grand jury.

Chapter 124, Acts 1901, which it is insisted repeals by implication the Act of 1841-42, is entitled:

"An act to create a board of jury commissioners for each county in this State having a population of one hundred and twenty thousand inhabitants or over, under the federal census of 1900, or any subsequent federal census, and for the selection of juries, to prescribe the duties of the members of said board and of the judges, and to punish violations of this act; to provide for jury lists and jury boxes to be kept in each county of this State; and to repeal all laws in conflict with this act."

On the population basis indicated in this title, the act, at the time it was passed, could apply only to Davidson and Shelby counties.

Section 1 of the act provides that there shall be a board of jury commissioners for each county, consisting of three discreet persons, who are householders and

freeholders of the county, and who are not practicing attorneys at law or State or county officers, who have no suit pending in said court at the time of their appointment, and not more than two of whom shall belong to the same political party, "to be appointed by the circuit judge who holds court in said county, and in case there is more than one circuit judge or a judge holding the criminal court, or a chancellor or other judge whose duty it shall be to hold the circuit court or criminal court, then by such judges holding circuit or criminal courts, and if more than one such judge, by all jointly."

Section 2 sets out the oath to be taken by the commissioners.

Section 3 prescribes the details of the organization of the board and declares that the clerk of the circuit court shall be the clerk of the board of jury commissioners.

Section 4 provides:

"It shall be the duty of said jury commissioners to select from the tax books of the county and other sources, names of upright and intelligent men, known for their integrity, fair character and sound judgment, from each and every district in the county, and in proportion to the population of such districts, as near as may be, and possessing the qualifications now prescribed by law, except that service on a regular panel within two years shall not disqualify a person, a list of names numbering not less than one-fifth the whole number of votes cast in the county for presidential

electors at the presidential election next preceding the making of said list; provided, said list for any one county [shall not] contain more than four thousand names, nor less than two hundred and fifty names. Said list shall constitute the jury list for two years from the making thereof, and shall not, during said years, be added to or taken from, except as hereinafter provided."

The residue of section 4 relates to the keeping of record books as a jury list for the county, the placing of each and all the names of the persons thus selected written on slips or scrolls of paper in a box securely locked under seal, and to the compensation of the clerk of the circuit court for his services as clerk of the jury commissioners.

Section 5 provides:

"That not less than ten days nor more than fifteen days before each regular or special term of the circuit court or criminal court, said board shall unlock the jury box and break the seal thereof, and, after having well shaken the same, cause to be drawn therefrom in the presence of the board, by a child under the [ten] years of age, a number of names equal to the number of jurors, who, under existing laws, are selected by the county court, and the judge of the circuit court or criminal court, or the number designated by order of the court as hereinafter provided, to constitute the regular panel of grand and petit jurors for such terms of court. . . . When in this way the required number of

names have been drawn, the slips or scrolls on which they have been written shall be placed in a sealed envelope and safely kept by the chairman of the board, and by him delivered in open court to the judge of the court on the first day of the term."

Then follows in this section a form of the report to be made by the jury commissioners to the court of the panel thus drawn. After this the section proceeds as follows:

"The report shall be delivered to the clerk of the circuit or criminal court, according to the court for which said panel has been drawn, and by him filed in his office, and the date of such filing endorsed thereon. Thereafter, and at least five days before the next regular or special term of such court, the clerk of the court shall issue to the sheriff a writ of *venire facias,* commanding him to summons the persons whose names are set out in said report as the jurors for said term of court, and it shall be the duty of the sheriff to serve same as now provided. At such regular or special term of the court the judge thereof shall first compare the list contained in the report filed with the clerk with the names on the slips or scrolls delivered in open court by the chairman of the board, and if they correspond, they shall constitute the panel of grand and petit jurors for that term of the court, and said report shall be spread upon the minutes of the court. From this panel the grand and petit jurors shall be made up, as now provided by law, examining each proposed juror to ascertain whether he is qualified. . . ."

The act contains a number of other sections relating to the details of the duties of the jury commissioners, the clerk of the board, and other matters that do not call for special mention.

From an inspection of the act it will be seen that its provisions are exhausted when a panel of veniremen is presented to the court. The act provides that "from this panel the grand and petit juries shall be made up as now provided by law." The question is, what law is here referred to? The plaintiff in error insists that the reference is to Shannon's Code, section 5827, already quoted, to the effect that it is the duty of the court to direct the names of the jurors in attendance to be written on scrolls, and placed in a box or other suitable receptacle, and drawn out by a child under ten years of age, and that the thirteen jurors whose names are first drawn shall be a grand jury for the term. The State insists that out of this panel the judge shall himself select the grand jury under the provisions of section 4 of the Act of 1841-42.

As already indicated, counsel for plaintiff in error insists that this section was repealed by the above-mentioned Acts 1901, c. 124.

The law upon this subject is thus stated in recent cases decided by this court:

"It is a familiar and universal rule that repeals of statutes by implication are not favored. The repugnancy between the two statutes must be very plain and unavoidable. Both the terms and the necessary opera-

tion of the two acts must be incapable of reconciliation before the older act will be repealed by the later one, for the reason that statutes are only held to be repealed by implication because it cannot be supposed that the lawmaking power intended to enforce laws which are contradictions." *Blaufield* v. *State,* 103 Tenn., 600, 53 S. W., 1092. "Repeals by implication are not favored, and a later act will not be held to thus repeal a former one upon the same subject, unless the two are absolutely repugnant and in irreconcilable conflict. Nothing short of this can have that effect." *Railroad* v. *Byrne,* 119 Tenn., 315, 104 S. W., 469. "An act will never be held to repeal by implication another act, unless it clearly appears that the two acts cannot stand together. The repugnancy between the two acts must be plain and unavoidable." *Railroad* v. *Railway,* 116 Tenn., 515, 95 S. W., 1023. To same effect, *Fisher* v. *Baldridge,* 7 Pickle, 420, 19 S. W., 227; *McCampbell* v. *State,* 116 Tenn., 105, 93 S. W., 100; *Carroll* v. *Griffith,* 117 Tenn., 500, 97 S. W., 66; Lewis' Sutherland, Statutory Construction (2 Ed.), vol. 1, sec. 247.

Counsel for plaintiff in error rely upon the rule that a statute inconsistent with, and embracing the entire subject-matter of, a former statute, repeals it by implication. This rule is well settled. *Poe* v. *State,* 1 Pickle, 495, 3 S. W., 658; *Terrell* v. *State,* 2 Pickle, 523, 8 S. W., 212; *Rodemer* v. *Mitchell,* 6 Pickle, 65, 15 S. W., 1067; *State, ex rel.,* v. *Butcher,* 9 Pickle, 679, 28 S. W., 296; *Chattanooga* v. *Neely,* 13 Pickle, 527, 37 S.

W., 281. This rule does not rest upon the theory that the later statute actually repeals the earlier one, but upon the principle that, there being a conflict between the two acts and their provisions being inconsistent and repugnant, one or the other must give way and remain inoperative during the life of the other.

In the case of *Home Insurance Co.* v. *Taxing District,* 4 Lea, 648, Mr. Justice Cooper, speaking to this question, said: "Strictly speaking, the new statute does not repeal the old statute, however inconsistent with it. It is a mere form of expressing the result to say that the one repeals the other by implication. The prior act is not repealed, but rendered inoperative, and this is made plain by the fact that a direct repeal of the later act, without any reference to the former, will, by a rule of the common law, give efficacy to the former. It was precisely because the old act never was repealed that it thereby became operative. It is a convenient though inaccurate, use of language to say that the new law repeals the old, and that the repeal of the new law revives the old. More properly, the new act is an obstacle to the operation of the old act, which obstacle is removed by its repeal."

But it is not insisted in behalf of plaintiff in error that the act of 1901 embraces the entire subject-matter of, and repeals, chapter 52, Acts 1841-42.

The latter act is entitled: "An act to establish a criminal court in the county of Davidson." It contains thirteen sections, and provides all the officers and

machinery necessary to the operation of the court for the trial of criminal cases.

Section 1 provides: "That from and after the passage of this act, a court shall be established in the county of Davidson, for the trial of all crimes and offenses against the laws now in force in this State, and such as may be hereafter enacted, to be composed of one judge, to be elected by the legislature, to hold his office eight years, to reside within said county, and to receive, as a compensation for his services, an annual salary of $1,000.00."

Section 2 fixes the times for holding the court. Section 3 directs that the attorney-general from the Sixth judicial circuit, the clerk of the circuit court, and the sheriff of Davidson county shall attend said criminal court and perform all the duties now by law required of them, respectively, in relation to the criminal business of the circuit court of Davidson county, and shall, respectively, receive the same fee and compensation therefor. Section 4 relates to the selection of a grand jury and two petit juries to attend the court, and has already been quoted in full. Section 5 provides for the transfer of the records, etc., in criminal cases pending in the circuit court to said criminal court. Section 6 confers upon the said criminal court the same jurisdiction in criminal cases "now held by the circuit court of Davidson county." Section 7 provides for appeals and writs of error to the supreme court. The remaining sections of the act, except section 11, per-

tain to the duties of the officers of the said court. Section 11 repeals all laws giving criminal jurisdiction to the circuit court of Davidson county.

It is thus perceived that the act in question establishes a criminal court in Davidson county, with the machinery necessary for such court, complete in all its details. It is certainly true that the act of 1901 does not in any way or manner conflict with any part of twelve of the thirteen sections of said act of 1841-42, and therefore that this case does not fall within the class of cases above referred to, wherein a later statute works a repeal of an earlier one, because it embraces new provisions covering the entire subject-matter of the former statute.

It is well settled that where the later statute does not cover or embrace all of the provisions of the earlier one, and does not manifest a clear and unmistakable intention to provide and substitute a new system for the old, the provisions of the earlier act not clearly covered by the later one are unaffected and still in force, and the repeal operates only to the extent of the repugnance and conflict. *Durham* v. *State,* 5 Pickle, 730, 18 S. W., 74; *Cate* v. *State,* 3 Sneed, 120; *Frazier* v. *Railroad Co.,* 4 Pickle, 163, 166, 12 S. W., 537; *Hockaday* v. *Wilson,* 1 Head, 114; *Bailey* v. *Drane,* 12 Pickle, 19, 33 S. W., 573; *Iron Co.* v. *Pace,* 5 Pickle, 707, 15 S. W., 1077.

It therefore becomes necessary to inquire wherein the act of 1901 conflicts with the act of 1841-42. The only

122 Tenn—46

provisions of the latter act which can possibly be considered repugnant to the act of 1901 are those found in section 4 of the former act, with reference to the appointment of juries. The act of 1841-42, as construed in *Harris* v. *State*, supra, authorized and empowered the judge of the criminal court to appoint thirty-seven men from the body of the county of Davidson to attend the criminal court and serve as jurors. In addition to the power to appoint a sufficient number of talesmen or veniremen to attend for jury service, he was further authorized and empowered to designate by name from the venire thus appointed and summoned thirteen qualified persons to serve as a grand jury.

To what extent are the provisions of the Act of 1901 inconsistent with and repugnant to the exercise by the judge of the criminal court of the powers thus conferred? Manifestly the provisions of this act are inconsistent with the power of the judge of the criminal court to appoint a panel from the body of the county to attend the criminal court for jury service, because the act provides that the panels from which jurors are to be selected in the criminal and circuit courts shall be drawn from the jury box by the jury commissioners. This necessarily operates to deprive the judge of that power. The venire, or panel, is now in court. How shall the juries be made up? It is necessary to proceed by some method to select or designate thirteen members of the panel to act as grand jurors and others to act as petit jurors. The act of 1901 contains no sug-

gestion of the particular method to be followed in this matter. It simply provides that "from this panel the grand and petit juries shall be made up, as now provided by law." The method provided by law is found in the act of 1841-42, and that method is still the lawful one, because neither the act of 1901, nor any other act, provides a different method. No provision of the act of 1901 has been indicated by counsel or discovered by the court which is inconsistent with or repugnant to the exercise of this power by the judge of the criminal court. In the brief of counsel for plaintiff in error certain particulars are pointed out wherein the two acts are in conflict; but in every instance the conflict relates to the matter of drawing the entire panel from the body of the county, and has no reference to the designation or selection of the particular members of the panel who shall serve on the grand jury, and those who shall serve on the petit juries. An examination of the act of 1901 discloses that each and every provision of that act may be complied with in every detail, and yet the court will be left with an unorganized venire or panel—with the grand jury and the petit juries not "made up." How, therefore, can it be reasonably insisted that there is an unavoidable inconsistency and repugnancy between the act of 1901 and the act of 1841-42, in so far as the latter act directed the judge of the criminal court to designate the members of the panel, who should serve on the grand jury and those who should serve on the petit jury.

It is true that the act of 1841-42 does not in terms separate the process of obtaining juries into two steps or stages; that is to say, it does not set out, first, that the judge shall appoint from the body of the county a venire or panel to attend his court for jury service, and then by an additional provision provide that the judge may designate the particular members of the panel to serve on the grand jury and petit jury, but such is the effect of the language used in the act as construed in *Harris* v. *State,* supra. It is only in respect of the right of the judge to take the first step, as above indicated, that the provisions of the act of 1841-42 are superseded by the act of 1901. A study of the caption of the record in the case at bar discloses a practical demonstration of the fact that there is no conflict in the operation of the two statutes in question as they are construed and applied by the judge of the criminal court. The record shows that the panel from which the juries were selected was brought to the bar of the court under the provisions of the act of 1901, and when the panel was thus in court, and all the provisions of the act of 1901 exhausted, the grand jury was yet to be organized. It was, therefore, the duty of the judge to appoint the grand jury "as provided by law," to wit, the fact of 1841-42.

Certain other irregularities in the matter of the selection of the grand jury, and the petit jury as well, are averred in the plea of abatement and noted supra.

Taking up these objections in the most convenient order, they are:

Balden v. State.

First, that "the slips or scrolls upon which were written the five hundred names taken from the jury box by the board of jury commissioners for the January term, 1910, of said court, were not placed in a sealed envelope, safely kept, and delivered by the chairman of said board in open court to the judge of said court on the first day of said term, and the said judge failed to compare the list contained in the report filed by the jury commissioners with the clerk of said court, with the names on the slips or scrolls delivered in open court by the chairman of the board of jury commissioners, to ascertain if they were the same, and said report so filed by the clerk was never spread upon the minutes of said court."

The act of 1901 (section 5) provides that, when the names of the panel for the term have been drawn from the box by the jury commissioners, the slips or scrolls on which the names are written shall be placed in a sealed envelope, and delivered by the chairman of the board in open court to the judge of the court on the first day of the term. It is further provided that the judge shall first compare the list contained in the report, which the statute also requires the commissioner to file with the clerk, with the names on the slips or scrolls delivered in open court by the chairman of the board, and if they correspond they shall constitute the panel of grand and petit jurors for that term of the court, and said report shall be spread upon the minutes of the court.

It is manifest that these latter requirements are pro-
vided in order that it may be seen by the court·that the
list reported to the court and summoned by the sheriff
corresponds with the names drawn from the box as
shown by the slips or scrolls.    There is no averment
in the plea that the names in the list did not correspond
and this averment, we think, is necessary, before the
plaintiff in error could avail himself of the irregularity.

There are two provisions in section 5 of the act of
1901 with reference to the report of the jury commis-
sioners.    The first is that "the report shall be delivered
to the clerk of the circuit or criminal court, according
to the court for which said panel has been drawn, and
by him filed in his office, and the date of such filing
endorsed thereon." And later on in said section it is
provided that "said report shall be spread upon the
minutes of the court."

It is not averred in the plea that the report was not
duly filed in the office of the clerk and such filing in-
dorsed thereon.    It must be assumed, therefore, that it
was so filed and became a record of the court, and the
mere fact that it had not been spread on the minutes
is also a mere irregularity, which could not in any wise
prejudice plaintiff in error.

Again it is averred in the plea that the rule or order
under and by which said panel of grand and petit juries
was drawn from the jury box by the jury commission-
ers and entered by the judge in the minute book of the
criminal court does not designate the number of juries

and additional and extra jurors who shall be in attendance at the January term of said court, as required by law, but that the order simply directed the jury commissioners to furnish the court with five hundred names from which to select the grand and petit juries for the then ensuing January term, 1910.

This latter objection is not tenable. The act does provide that the court shall by order on the minutes, "designate the number of juries and additional and extra jurors" who shall be in attendance on the court; but the order in the present case is a substantial compliance with this provision of the statute, because no other number than thirteen is recognized as a grand jury, and no other number than twelve is recognized as a petit jury, by the laws of Tennessee, and it is a mere matter of calculation to determine how many juries and additional and extra jurors are included in the five hundred names.

These latter irregularities are cured by section 17 of the act, which provides "that in the absence of fraud, no irregularity with respect to the provisions of this act shall affect the validity of any action of a grand jury, if this act has been substantially complied with, or the validity of any verdict rendered by a trial jury, unless such irregularity has been specially pointed out and exception taken thereto before the jury is sworn."

No objection was made to the trial jury in the case at bar on any ground. There is no averment of fraud in respect of the grand jury.

Balden v. State.

On the grounds stated, we are of the opinion that there was no error in the action of the trial judge in sustaining the demurrer; and, no error being pointed out as having occurred in the trial of the case before the jury, we are of the opinion that the judgment of the court below must be in all things affirmed.