CLARENCE MELTON AND RANSOM TANNER *v.* THE STATE.*

(*Nashville.* December Term, 1929.)

Opinion filed February 1, 1930.

---

*Implied repeal of earlier act from latter statute covering whole subject, see 25 R. C. L., 915; 4 R. C. L. Supp., 1435; 4 R. C. L. Supp,, 1607; 5 R. C. L. Supp., 1352; On necessity of exception to improper remark of trial judge during trial, see 26 R. C. L., 1030; 5 R. C. L. Supp., 1435.

TURNER & HASTON and CUMMINGS, MELTON & CUMMINGS, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. SPECIAL JUSTICE ALBERT WILLIAMS delivered the opinion of the Court.

This is an appeal in error from a conviction upon an indictment predicated upon section 2, chapter 56, Acts of 1871 (Shannon's Code, sec. 6454), which is as follows:

"Any person who has carnal knowledge of any female of the age of ten years or upwards, without her consent, by administering to her any substance, or by any other means producing such stupor, imbecility of mind, or weakness of body, as to prevent effectual resistance, shall be punished as in case of rape."

There are twenty-eight assignments of error but these for convenient discussion may be divided into two groups: first, those which deal with the effect of the statute and the trial court's interpretation thereof and

second, those which challenge the sufficiency of the evidence and the procedure of the court.

It is earnestly urged by the plaintiffs in error that the statute under which the indictment was found has been superseded and repealed by chapter 129, Acts of 1893, chapter 19, Acts of 1901, and chapter 36, Acts of 1911, which taken together are said to embrace all the offenses of such a nature as that for which plaintiffs in error were convicted. It is urged that the statute denouncing rape would have been repealed by these acts had not the Legislature expressly excepted from the provisions thereof all cases falling under the statute relating to rape, and that since the Legislature did not expressly provide against the repeal of the statute under which this indictment was found such repeal was implied.

No principle of the law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and this notwithstanding the fact that it may omit material provisions of the earlier statutes. *Poe* v. *State,* 85 Tenn. (1 Pick.), 495; *Terrell* v. *State,* 86 Tenn. (2 Pick.), 523; *State* v. *Butcher,* 93 Tenn. (9 Pick.), 679.; *Irwin* v. *State,* 116 Tenn., 71; *Balden* v. *State,* 122 Tenn., 704; 25 R. C. L. (Statutes), 915.

Where a statute covers the whole subject-matter of an earlier Act and it is evident that it was intended to be a revision of, or substitute for the earlier Act, although it contains no express words to that effect it operates as a repeal of the earlier Act to the extent that its provisions are revised and supplied. Such is the rule stated in R. C. L., supra, and our own cases furnish numerous examples thereof. *Railroads* v. *Sadler et al.,* 91 Tenn. (7 Pick.), 507; *Zickler* v. *Union Bank & Trust*

*Co.,* 104 Tenn. (20 Pick.), 282, 298; *Turner* v. *State,* 111 Tenn., 606; *Hailey* v. *State,* 156 Tenn., 85.

The question now submitted to the court, therefore, is whether or not the subsequent Acts above mentioned were intended to cover the whole subject-matter of the Act under which the indictment was found and whether these statutes ''were intended to be a revision of or a substitute for the earlier Act.''

The statute under which the indictment was found denounced the carnal knowledge of any female of the age of ten or upwards without her consent, by administering to her any substance producing such stupor, imbecility of mind or weakness of body, as to prevent effectual resistance. This provision was taken from the Alabama Code of 1852, section 3091, and was intended to punish an act which it was apprehended might not be punished appropriately under the law then existing. The statute does not amend the law defining rape and refers thereto only to fix the punishment for the particular offense against which the enactment is directed.

A necessary element of the offense denounced is some act on the part of the offender which would produce such stupor, imbecility of mind, or weakness of body, as. to prevent effectual resistance. Without the allegation of this stratagem there could be no indictment under the statute. The offense, therefore, is of narrower definition than rape.

If it be said that the crime of rape must necessarily embrace the offense denounced by this statute, let it be observed that this fact, if true now, was true likewise at the time of the statute's enactment. As a matter of fact the Legislature in the light of certain decisions then recent may have entertained grave doubt that intercourse

with a female rendered stupid, imbecile, and weak through the use of drugs would be punishable as rape and may have enacted the statute in question to close all avenues of escape to those who sought through the artifice of drugs the same end which the typical rapist secured through violence. In an opinion by Judge CARUTHERS this court had invited legislative attention to the fact that while the moral turpitude involved in acts of this nature would be as great when perpetrated by fraud and deception as when accomplished by force the law, at least in some instances, made ill advised distinctions. *Wyatt* v. *State,* 32 Tenn. (2 Swan), 395.

This, said the learned Justice, he had no doubt the Legislature would correct "when the case is brought to their attention," and it is probable that the Legislature in enacting the statute in question was seeking to make ample correction of the deficiencies thought to result from the court's close adherence to the rule requiring an intent to employ force as an element necessary in the offense of rape. Since the later statute did not amend the definition of rape but merely measured by the punishment for rape the penalty for a related offense it is apparent that the Legislature meant for the statutes denouncing both offenses to be coexistent.

A *fortiori* there is no inconsistency in the coexistence of two statutes, one denouncing the use of drugs to accomplish the improper purpose and the other providing against the defiling of female under a certain age irrespective of her consent. In one case the age of the injured female and her prior chastity are determinative facts, in the other the introduction of such evidence could be only for purposes ancillary to the primary inquiry. In one case it is immaterial whether the female consented

willingly or resisted violently, in the other her failure to consent is of the very essence of the crime.

It cannot be successfully maintained, therefore, that a later enactment or codification of laws relating to the carnal knowledge of a female under a particular age would operate to repeal the statute directed against the use of drugs and stratagem to accomplish such carnal knowledge. The fact that the same offense might be punishable under more than one of the statutes is incidental and would not be conclusive evidence of any legislative intent to merge the offenses.

It is also insisted by the plaintiffs in error that the trial judge misinterpreted the law when he held that a verdict of guilty might be properly returned even though the evidence should show that the prosecutrix in the case voluntarily imbibed the liquor offered her and was, therefore, reduced to a helpless state through her own voluntary act. This court finds no error in the trial judge's construction of the statute. The words "without her consent" modify the verbal phrase "has carnal knowledge" and not the verbal noun "administering." Both the rules of grammatical construction and the sense of the context justify the trial court's interpretation.

It is also insisted that it was not the purpose of the statute to refer to the use of whiskey but only to the administration of such drugs as might be secretly administered to the female without her knowledge of their effects. This also seems to be an untenable construction. Nowhere in the body of the Act is the word "drug" employed although the statute is commonly denominated "the Drug Act." The term "any substance" seems amply broad to include whiskey and even if this be not agreed to the supplemental expression "or by any

other means'' leaves no doubt of the breadth of legislative intent.

■ Passing to the assignments which challenge the sufficiency of the evidence to sustain the conviction, we are unable to say that there is any want of evidence indicating the guilt of plaintiffs in error or that there is any preponderance in favor of their innocence. The undisputed evidence was that the plaintiffs in error in company with one Hershell Meadows in February, 1929, and in Warren County went to the home of Nettie Young, a sixteen-year-old girl, and induced her and a companion, Iona Cope, a woman twenty-five years of age, to accompany them in an automobile. After driving to several places in the county one of the men secured whiskey upon which the sixteen-year-old girl, Nettie Young, became drunk.

After the girl had drunk a quantity of whiskey the men drove to a schoolhouse where both plaintiffs in error had intercourse with Nettie Young. She was brought home exceedingly drunk and remained ill for several days from the effects of her debauch.

All this is admitted by plaintiffs in error who, however, deny the more harrowing and repulsive parts of the proof, which need not be at this point repeated. It will thus be seen that the admissions of plaintiffs in error and the uncontradicted testimony omit but one element of the offense necessary to establish guilt, namely the fact that the abused female never consented to the acts of intercourse but was by the administration of whiskey reduced to such stupor, imbecility of mind, or weakness of body as to prevent effectual resistance and preclude the possibility of consent. A number of witnesses are offered to establish the only link omitted by the testimony of the plaintiffs in error themselves.

Mrs. Martha Young, mother of the injured female, testified that her daughter and Miss Cope lived at the house of the witness at the time of the occurrence and that about seven o'clock they left home, according to her understanding, to go with plaintiffs in error and Hershell Meadows to services at the Holiness Church; that about fifteen minutes after one o'clock her daughter was brought home in a completely drunken stupor, helpless and apparently unconscious; that she did not revive until about ten o'clock the next morning at which time Dr. Trail had been summoned to her bedside, and that she remained in bed about three weeks thereafter as a result of her abuse.

According to the testimony of Iona Cope, plaintiffs in error and Hershell Meadows proposed to take her and Nettie Young to the Holiness Church but drove by the church on the pretext of needing gasoline. She stated that the plaintiffs in error finally admitted that they did not need gasoline but were on the search for a place where they could obtain whiskey and that they made several stops to obtain liquor and finally secured a full quart. According to this witness' testimony plaintiffs in error insisted that their companions drink the liquor and the witness states that after she had taken a taste of the liquor and had pretended to have drunk more copiously, the bottle was passed to the back seat where Nettie Young was sitting. According to this witness' testimony Nettie Young was completely drunk by the time plaintiffs in error stopped at the schoolhouse where the act of intercourse was committed and had been sick and vomiting; she states that plaintiff in error Melton took the girl out of the car and into the schoolhouse, later returning and telling her that he had had inter-

course with Nettie Young and that he had left plaintiff in error Tanner with her in the schoolhouse. Witness testified that the next time she saw Nettie Young she was lying on the ground near the right-hand side of the car and that she was put into the back seat of the car by the three boys who had accompanied them.

The remainder of this witness' testimony relates to the conduct of the parties after leaving the schoolhouse and driving around until they finally took the girls home, the testimony indicating that the boys were partially drunk and Nettie Young completely so.

The testimony of Nettie Young corroborates that of Miss Cope and is of like import up to the point of the drinking of the liquor. According to this witness' testimony plaintiff in error Melton marked off a place on the bottle of whiskey and told her that she would be required to drink down to the place which he had measured and that she did consume the suggested amount and lost consciousness while they were driving from Center Town toward McMinnville, remembering nothing further until she regained consciousness about ten o'clock Monday morning. She also testified concerning her physical condition as a result of her treatment at the hands of her defilers.

Dr. A. J. Trail, who made an examination of Nettie Young on Monday morning following the offense, testified that she had been drunk the night before and was still sick when he made the examination. He also stated that from his examination it was evident that the girl had been abused the night before and that her condition would not have resulted from normal intercourse.

Frank Denby and Clyde Smartt testified in behalf of plaintiffs in error that on the night previous they in

company with plaintiff in error Melton had been with Miss Cope and Miss Young to the same schoolhouse where the offense occurred and that improper relations occurred at that time. Since the offense charged is not one against which the previous unchastity of the abused female would be a conclusive defense, the testimony of these witnesses is material only in so far as it reflects upon the credibility of the witnesses for the State, the probability of their story, and the likelihood of Nettie Young's consent to the act of intercourse. To weigh against the effect of this testimony, a cloud of character witnesses was called in behalf of the State. More than a score of these testified that Miss Young and Miss Cope were of good moral character. There were seven witnesses who testified that the general character of plaintiff in error Melton was bad. In addition to this the character of the testimony of plaintiff in error Melton was such that it in all probability helped to convince the jury that his statements could not be relied on.

This court, therefore, finds no difficulty in disposing of the assignments of error which dispute the sufficiency of the proof to sustain the convictions.

Other assignments of error rely upon remarks which were made by the trial judge in colloquy with counsel in the presence of the jury and which are said to have been prejudicial to plaintiffs in error. The record does not disclose that any objection was made to these remarks at any time before verdict, and it is the general rule that prejudicial remarks made by the trial judge in the course of the trial must be seasonably objected to and an exception noted in order to save the question for review. 26 R. C. L. (Trial), sec. 31, p. 1030; 38 Cyc., p. 1325; *State* v. *Tully,* 31 Mont., 365, 78 Pac., 760, 3 Ann. Cas., 824; *Pelton* v. *Spider Lake, etc., Lumber Co.,* 132

Wis., 219, 112 N. W., 29, 122 A. S. R., 963. The court does not hold that the remarks in question were prejudicial to plaintiffs in error but if plaintiffs in error conceived that such was the case their rights to object were not preserved by seasonable exceptions.

Neither is there found reversible error in the admission or exclusion of evidence.

The judgment of the trial court is affirmed.