## NORTHCROSS v. TAYLOR.—197 S. W. (2d) 9.

Western Section.  June 11, 1946.

Petition for Certiorari denied by Supreme Court, October 5, 1946.

L. W. Morgan and J. T. Gray, Jr., both of Brownsville, and Holmes & Holmes, of Trenton, for plaintiff in error.

Sam P. Walker, of Memphis, for defendant in error.

BAPTIST, J. This is an appeal from a judgment of the Circuit Court of Haywood County sustaining, upon the verdict of a jury, the will of Mrs. Jennie Hewitt Harwood, deceased.

Mrs. Harwood died, testate, in Haywood County in December, 1943, leaving surviving the following children

and heirs at law; two daughters, Josephine Northcross, plaintiff in error, Rose Taylor, defendant in error; two sons, Thomas E. Harwood, Jr., and Robert H. Harwood. The deceased was the widow of Judge Thomas E. Harwood. Judge Harwood and a son Merion R. Harwood predeceased her.

Mrs. Harwood had lived in the home of her daughter, Rose Taylor, the defendant in error, since 1939, and was 87 years old at the time of her death.

On May 17, 1940, Mrs. Harwood executed her will, which was attested by two witnesses and on November 5, 1940, executed a codicil which was also attested by two witnesses. Neither of these two papers are in controversy in this case.

The paper writing in question is a purported second codicil to the will in the following form:

"March 22, 1943
"Codicil to My Will

"If I do not make a sale of my house & lot (206 Church St., Trenton, Gibson Co., Tennessee prior to my death, I hereby will the same to my daughter Rose Harwood Taylor to defray the expenses incident to my last illness & burial.

"Witness my hand, Mrs. Thomas E. Harwood, Sr."

After Mrs. Harwood's death this paper writing was found in a pasteboard box on a table by her bed, in which she was in the habit of keeping writing material, jewelry and other things she used frequently; letters which she had received from her family and copies of letters she had written to them; also an obituary notice and a list of pallbearers she desired to serve at her funeral in case of her death.

It was shown by the witnesses, T. J. Pearson, F. R. Chapman, Mrs. Eldorado Boothe and Malissa Taylor that

this paper writing was entirely in the handwriting of the testatrix.

Two questions are presented by the plaintiff in error:

First. Error is assigned on the action of the Circuit Judge in disallowing the application of the plaintiff in error for a continuance.

This application was made on the ground that Thomas E. Harwood, a son of the testatrix, was a material witness in that because of his education, training and experience in the medical profession was competent to know the physical and mental condition of the testatrix at the time of the execution of the codicil in question; that Rose Northcross, a daughter of the contestant and granddaughter of the testatrix knew the physical and mental condition of the testatrix at the time of the execution of the codicil in question, and that the contestant was informed and believed that she would be able to prove by the witnesses that the physical and mental condition of the testatrix at and before the execution of the codicil was such that she was susceptible to be influenced and was not capable of executing a valid codicil at that time and that contestant knew of no other witness by whom she could prove the surer facts nor so well.

This application was supported by the affidavits of Honorable V. H. Holmes, one of the attorneys for the plaintiff in error, the material parts of which are as follows:

"He is informed and believes that Thomas E. Harwood, a son of this alleged Testatrix would testify that his mother's physical condition and mental condition at and before the date of this codicil in question was such that she was readily susceptible to influence, and that she was not mentally capable of understanding the affect of the alleged codicil. The said Thomas E. Harwood is a

Colonel in the Military forces of the United States, is now and for several months past, Commanding Officer in charge of a large military Hospital in the State of Colorado. He has had many years of training and experience as a Doctor of Medicine.

"Rose Northcross, a daughter of contestant, and a grand daughter of the alleged testatrix is in the Military Service of the United States on duty in the State of California.

"Affiant is informed and believes that contestant can prove by this witness that the alleged testatrix was not mentally capable of executing this alleged codicil and that before and at the time of this alleged execution of this codicil in question, the physical and mental condition of this alleged testatrix was such that she was readily susceptible to undue influence.

"Affiant does not know of any other witnesses whose opportunities to know and judge this physical and mental condition of the alleged testatrix were equal to the opportunities and abilities of these two witnesses and knows of no others by whom she can prove the surer facts and circumstances, nor so well.

"For many years, within the knowledge of this affiant, it has been the practice not to try any civil cases at this May term of this Court.

"During the month of April of this year, Affiant inquired among the members of the Bar of this Court, if that practice would prevail of this present time, and was advised that the same practice would be followed.

"Later Affiant was informed that this contestant would insist on a trial at this present term. Immediately Affiant began making arrangements for the attendance of the witnesses, Colonel Thomas E. Harwood and Rose Northcross at the present term. Of course it was necessary that

the said witnesses apply for leave; and Affiant is informed that the witnesses were making such applications.

"However, it was published in the Commercial Appeal on Thursday of last week that the entries docket, except jail cases, would be continued at this term and therefrom, affiant advised said witnesses to cancel their applications for leave so that they could be present at the next term of this Court.

"Affiant, for the contestant, can have the said witnesses present at the next term of the Court or their depositions. There was not time to arrange to take the depositions of said witnesses after Affiant learned that there would be an effort to try at this term. Neither of said witnesses is under subpoena and neither could have been subpoenaed as each and both have been absent from this State and in Military Service since the suit was begun."

█ This Court cannot review the trial Court's exercise of discretion in disallowing the application for a continuance in the absence of a showing that he abused it. Chumbley v. People's Bank & Trust Co., 166 Tenn. 35, 60 S. W. (2d) 164.

█ The affidavit of Judge Holmes states that he is informed and believes that the two witnesses would testify to a certain state of facts. The source of such information is not given. There is no showing that the affiant or the plaintiff in error had talked to or corresponded with the witnesses on the subject, nor that Mrs. Northcross had any evidence to support the belief that the witnesses would testify to the state of facts related. It may be added that the contestant Mrs. Northcross, daughter of the testatrix did not testify to unsoundness of mind of her mother, nor to any facts tending to support such theory.

The Judge in his charge stated that counsel for contestant in argument abandoned the issue that the testa-

trix was of unsound mind at the time of the execution of the second codicil.

The affidavit also sets out that it had been the custom for many years to continue the entire docket of the May term of the Circuit Court; that one of the attorneys inquired among the members of the Brownsville bar and was advised that the custom would prevail; that a notice to this effect was published in the Commercial Appeal and that relying upon these facts the witnesses were advised not to attend. We do not think the attorney was justified in relying upon the facts stated without consulting the Court or counsel on opposite side. We do not think the Court abused its discretion in denying the application for a continuance.

The second assignment of error is based upon the proposition that the will in question was not executed in accordance with the provisions of Code Sec. 8090, which is as follows:

"Holographic wills of land, and their requisites.—But a paper writing, appearing to be the will of a deceased person, written by him, having his name subscribed to it, or inserted in some part of it, and found, after his death, among his valuable papers, or lodged in the hands of another for safe-keeping, shall be good and sufficient to give and convey lands, if the handwriting is generally known by his acquaintances, and it is proved by at least three credible witnesses that they verily believe the writing, and every part of it, to be in his hand. (1784, October ses., ch. 10, sec. 5.)"

The contention is that this Code Section is not in conflict with Chapter 125 of the Acts of 1941 and, therefore is not repealed.

The caption of the Act of 1941 provides that it is "An Act to make uniform the execution of wills and repealing

all Acts in conflict therewith." After making provision for wills except holographic or nuncupative wills Section 5 is:

"Holographic Will. No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and his handwriting must be proved by two witnesses."

Section 10 repeals all Acts or parts of Acts which are inconsistent with the provisions of the Act.

We think Code Sec. 8090 is inconsistent with Sec. 5 of the Act of 1941.

In the former it is required that the will must be found among the testator's valuable papers or lodged in the hands of another for safekeeping; that the handwriting is generally known among his acquaintances and the handwriting proved by three witnesses.

In the latter it is provided that the will must be in the handwriting of the testator and this fact proved by two witnesses.

In the case of In re Holliday's Estate, 180 Tenn. 646, 177 S. W. (2d) 826, 827, in which the constitutionality of the Act in question was determined, the Court says:

"The purpose of the Act, however, as indicated by the title, is to make our statute of wills uniform with the statute of wills promulgated as above outlined to be adopted elsewhere. Since the statute so promulgated for adoption in all the States contains these limitations on the power to dispose of property by nuncupative wills, the statute enacted by our Legislature could not have been made uniform with the others unless it contained similar limitations. Not only the manner of execution of wills but uniformity of execution was the design of the Legislature. Such uniformity would not be attained un-

less the scope of nuncupative wills had been limited as in the statute."

To agree with the contention of the contestant means that we must hold that Code Sec. 8090 was not repealed by the Act of 1941, and that the provisions of the Code Section are in full force and effect.

We think that the Act in question is comprehensive and intended to cover the whole subject matter involving the execution of wills in this State.

If this is true then it is true that it repeals all other laws relating to the same subject.

In Melton v. State, 160 Tenn. 273, 276, 23 S. W. (2d) 662, 663, it is said:

"No principle of the law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and this notwithstanding the fact that it may omit material provisions of the earlier statutes. Poe v. State, 85 Tenn. 495, 3 S. W. 658; Terrell v. State, 86 Tenn. 523, 8 S. W. 212; State v. Butcher, 93 Tenn. 679, 28 S. W. 296; Erwin v. State, 116 Tenn. 71, 93 S. W. 73; Balden v. State, 122 Tenn. 704, 127 S. W. 134; 25 R. C. L. 'Statutes,' 915.

"Where a statute covers the whole subject-matter of an earlier act, and it is evident that it was intended to be a revision of, or substitute for, the earlier act, although it contains no express words to that effect, it operates as a repeal of the earlier act to the extent that its provisions are revised and supplied. Such is the rule stated in R. C. L., supra, and our own cases furnish numerous examples thereof. Railroad v. Sadler et al., 91 Tenn. 508, 19 S. W. 618, 30 Am. St. Rep. 896; Zickler v. Union Bank & Trust Co., 104 Tenn. 277, 282, 298, 57

S. W. 341; Turner v. State, 111 Tenn. 593, 606, 69 S. W. 774; Haley v. State, 156 Tenn. 85, 299 S. W. 799.''

The contention of the plaintiff in error is that the Act of 1941 is not in conflict with the Code Section 8090 in the elements necessary to make a paper writing a holographic will, and only in conflict as to the manner of proving same; in other words that the provisions of Code Sec. 8090 that a holographic will must be found among the testator's valuable papers is not in conflict with the Act of 1941 and is not repealed thereby.

As heretofore indicated we think the Act and the Code Section are in conflict, but the Act being comprehensive and covering the whole subject, the Act stands by itself and all previous Acts are repealed whether in conflict or not.

The defendant in error, in her brief, has called our attention to an interesting discussion of this subject by Judge Higgins in his ''Administration of Estates in Tennessee'' Section 742, in which he says:

''The declared intention of the Legislature in passing the aforesaid Act (chap. 125 of Act of 1941) was to cover entirely the subject of the execution of wills. Hence, this later statute *must* be construed as repealing all previous laws upon the subject and to substitute a new method of proving and establishing wills. In this regard the later Act is quite radical in at least two particulars, namely, one to the effect that the handwriting of the testator may be established in the Probate Court by two witnesses; and there is no requirement that the proponent of such will found the document among the valuable papers of the testator.''

This is a persuasive statement of the proper construction of the Act of 1941 coming from such eminent authority.

██ The plaintiff in error contends proof of "animus testandi" is lacking, the argument being that the will of the testatrix and the first codicil, both attested by two witnesses, were kept in a cedar chest, and therefore a presumption arises that the testatrix placing the second codicil in a box by her bedside had not finally determined that the second codicil should become effective as such.

We think the facts and circumstances tend to show that the testatrix executed this codicil in contemplation of death; it was placed with an obituary notice of the testatrix and a list of pallbearers to serve at her funeral. It bears the title "Codicil to my Will." Under these circumstances the Court is unable to say as a matter of law that the animus testandi is lacking.

By special request of the contestant the Court charged the jury that they must find that the purported codicil was executed by Mrs. Harwood and that she intended it to be and have effect as a codicil to her will.

In this case a large number of witnesses testified to the mental capacity of the testatrix and the contestant abandoned that issue.

██ The question of undue influence was submitted to the jury which found that issue in favor of the validity of the codicil, and there is evidence to support that finding.

We find no error in the record and therefore the assignments of error are overruled and the judgment of the Circuit Court is affirmed.

The plaintiff in error Mrs. Northcross will pay the costs.

Anderson, P. J., and Ketchum, J., concur.