## HARRIS *v.* STATE.

### (*Nashville.* February 2, 1898.)

1. GRAND JURY. *Selected and appointed by Judge, when and how.*

   Under the statute authorizing the Judge of the Criminal Court of Davidson County to appoint grand and petit juries for his Court, it is competent for him to designate by name thirteen qualified persons to serve as a grand jury, or to designate a larger panel, and from it select the required number of thirteen. (*Post, p. 289.*)

   Act construed: Acts 1853–54, Ch. 13.

   Case cited and approved: Turner *v.* State, 89 Tenn., 558.

2. SPECIAL JUDGE. *Competent to try capital case.*

   A special Judge selected by the members of the bar, at an election held by the Clerk in conformity to the statutes, to preside in the absence of the special Judge, may try and dispose of criminal, including capital, as well as civil cases. (*Post, pp. 289–291.*)

   Code construed: § 5730 (S.); § 3930 (M. & V.); § 4695 (T. & S.).

   Cases cited and approved: Ligan *v.* State, 3 Heis., 159; Halliburton *v.* Brooks, 7 Bax., 320; Hundhausen *v.* Insurance Co., 5 Heis., 705; Brewer *v.* State, 6 Lea, 199.

3. SAME. *Deputy Clerk may hold election for.*

   A deputy Clerk is authorized to hold an election for a special Judge of his Court. (*Post, pp. 290, 291.*)

   Code construed: §§ 409, 410, 4050 (S.); §§ 375, 376, 3155 (M. & V.); §§ 333, 334, 2314 (T. & S.).

   Case cited and approved: Martin *v.* Porter, 4 Heis., 413.

4. INDICTMENT. *Signed and sent by district attorney pro tem. valid.*

   An indictment signed and sent by a duly appointed *pro tem.* district attorney is valid. (*Post, pp. 291, 292.*)

   Code construed: §§ 5769, 5770 (S.); §§ 4733, 4734 (M. & V.); §§ 3962, 3963 (T. & S.)

   Case cited and approved: Turner *v.* State, 89 Tenn., 555.

5. CRIMINAL PRACTICE. *Proceeding conducted by special or deputy officers valid.*

That the proceedings in a criminal case are conducted by special or deputy officers constitutes no objection to their regularity or validity, if such officers are authorized by law and appointed in conformity to law. (*Post, pp. 291, 292.*)

6. SAME. *Objections come too late, when.*

Objection that a criminal trial was conducted by special or deputy officers, if available at all, comes too late when made for the first time in this Court. (*Post, p. 292.*)

Cases cited and approved: State v. Cole, 9 Hum., 628; McTigue v. State, 4 Bax., 314; Wallace v. State, 2 Lea, 31; State v. Dines, 10 Hum., 512; Turner v. State, 89 Tenn., 559.

7. VERDICT. *For murder in first degree sustained.*

Verdict for murder in first degree, with death sentence, is sustained upon the facts set out in the opinion. (*Post, pp. 292–294.*)

---

FROM DAVIDSON.

---

Appeal in error from Criminal Court of Davidson County. J. M. ANDERSON, J.

Attorney-general PICKLE for the State.

W. H. WASHINGTON for Harris.

WILKES, J. Dan Harris is convicted of the murder of Lizzie Edmundson and sentenced to death, and has appealed. Able counsel has been appointed to represent him in this Court, and he has, after examining the record, presented to the Court certain matters, which it is insisted are defects in the pro-

Harris v. State.

ceedings of the Court below. It appears that the jurors selected for the May term, 1896, were appointed and designated by the Judge of the Criminal Court. Out of the panel, the Judge selected and appointed the grand jury, and it is objected that this was irregular and vitiated the proceedings. The Acts of 1853–54, Ch. 13, which created the Criminal Court of Davidson County, provides in Section 5, that the Judge of the Court shall, from time to time, appoint a grand jury and two petit juries to attend its regular and special terms. Under this statute, it was entirely competent for the Judge of the Criminal Court of Davidson County to designate, by name, thirteen qualified persons to serve as a grand jury, or he could designate a larger panel, and from them select the required number of thirteen. *Turner* v. *The State*, 5 Pickle, 558.

There was no error in this feature of the trial. It appears that when the indictment was found the regular Judge, Hon. J. M. Anderson, was not in attendance at Court. The cause of his absence is not stated. It further appears that the Deputy Clerk caused an election to be held for a special Judge to hold Court, under § 5730 (Shannon's Code), when Hon. Matt W. Allen was elected to act in the absence of the regular Judge, and the indictment was found and returned into open Court. This indictment was prepared by E. S. Ashcraft, Attorneygeneral *pro tem.*, who had previously been appointed by the Court to act as such in the absence of the

16 P—19

regular District Attorney, Robert Vaughn. It is said that this proceeding is irregular, and defendant has not been proceeded against according to law.

The Code, § 5730 (Shannon's compilation), provides: "When, from any cause, the Judge of any Court of Record in this State, except the Supreme Court, fails to attend, or, if in attendance, cannot properly preside in a cause or causes pending in such Court, or is unable to hold the Court, a majority of the attorneys of the Court, who are present and are residents of the State shall elect one of their number then in attendance to hold the Court for the occasion, who shall have all the qualifications of a Judge of such Court, and who shall accordingly preside and adjudicate." Subsection 1 provides: "The election shall be held by the Clerk, and, in case of a tie, he shall give the casting vote." Subsection 2: "The person elected shall, during the period that he acts, have all the powers and be liable to all the responsibilities of a regular Judge."

This Act appears, from the record, to have been complied with in the selection of the special Judge, and the Act has been held to be constitutional and applicable in criminal cases, as well as civil. *John Ligan* v. *State*, 3 Heis., 159; *Halliburton* v. *Brooks*, 7 Bax., 320; *Hundhausen* v. *Ins. Co.*, 5 Heis., 705; *Brewer* v. *State*, 6 Lea, 199.

It is objected that the election was held by a Deputy Clerk, and not by the Clerk, as the first

subsection of the Act provides.    Under the statutes
and decisions of this State, a deputy has full ' power
to transact all the business of the Clerk.    Code
(Shannon's),  § 4050,  Subsec.  4;  §§ 409,  410;  *Martin*
v.  *Porter*,  4  Heis.,  413.

It is said that E. S. Ashcraft, Attorney-general
*pro tempore*, is not an official legally authorized to
draw and prefer indictments, and hence the indict-
ment in this case is a nullity.    Code (Shannon),
§ 5769 provides that if the Attorney-general for a
district fails to attend any term of the Circuit Court
or is disqualified from acting or if there is a va-
cancy in office, the Court shall appoint some other
attorney to supply his place.    Section 5770:  "The
acts of such Attorney-general *pro tempore* shall be as
valid as if done by the regular officer," etc.    See,
also, *Turner* v. *The State*, 5 Pickle, 555–8.    It is
said, finally, that while any one of these objections
may be cured under the statutes, still, when there
is a combination of such irregularities it must be
fatal.    It is said that here there was a special
Judge,  a  Deputy  Clerk,  an  Attorney-general  *pro
tempore*, a panel named by the regular Judge, and
a grand jury selected from such panel by him, and
thus there is little, if any, of the regular machinery
of the Court involved in the trial of this case.
But this, we are of opinion, can avail nothing, as
in such instances there is a proceeding according to
law, and officials appointed and selected under the
law, and each authorized by the law to act and

perform the duties which they have performed. In addition, all such objections come too late when made for the first time in this Court, even in criminal cases. *State* v. *Cole*, 9 Hum., 628; *McTigue* v. *The State*, 4 Bax., 314; *Wallace* v. *The State*, 2 Lea, 31; *State* v. *Dines*, 10 Hum., 512; *Turner* v. *The State*, 5 Pickle, 559.

We see no error of law in the record. The charge is full, correct, and unobjected to.

The only other question involved in the case is whether the verdict is warranted by the evidence. The defendant is a negro man about twenty-five to thirty years of age. The party killed was a negro woman, with whom he had been living in illicit relations for some time. She is described by the witnesses as a small woman, weighing about 115 or 120 pounds. The defendant is unusually large, tall, well-developed, and robust. It appears that on the day before the killing was done, at night, he had been drinking some, but the great weight of the evidence is that he was not drunk, and, according to the testimony of his own witnesses, was not so much under the influence of whisky, before and at the time he did the killing, as not to know what he was doing nor so as to affect his walking or actions. He went to the house where the deceased usually stayed, looking for her. Is appears that she was evading him, and that she was badly frightened at his threats previously made.

The defendant caught the deceased at the house

of Mary Mayberry, into which she ran for protection, the defendant pursuing her. She plead with him not to kill her, and to those around for protection. He caught her and carried her into the street, saying: "I am going to kill you; I told you I would do it, and I will cut your d—d head off." When he dragged her into the street he cut her with a knife across the back of the neck a serious, if not fatal, wound. He then threw her upon the ground and stamped her in the face, chest, and stomach, first with one foot and then the other, holding on to the fence with first one hand and then the other. Several persons saw the deed and heard the cries and the stamping, but no one dared to interfere, and several witnesses say that seeing they could not be of any aid, they turned away in horror. The woman cried aloud, begging for mercy, and for help, and called him pet names, and plead with him to spare her life, until, after repeated blows from his feet, her cries sank into low moans, and she then became unconscious. Defendant, all the time, was cursing the deceased, and saying to her, "I told you I was going to kill you." When the deceased was stamped into insensibility the defendant went rapidly away. She was carried, in this unconscious condition, to the city hospital, and, after lingering some three or four days, died from the injuries received. The defendant went to a house near by and remained during the night, and soon thereafter fled, swimming the Cumberland River and

getting on a freight train at Edgefield Junction, upon which he went to Howell City, Ind., where he was put off the train. He was subsequently arrested at Kansas City, Mo., and returned to Nashville.

The only defense made is an attempt to prove that the defendant was drunk, but the proof fails to sustain it. There is some evidence of an uncertain character that after the deed was done defendant was quite drunk, but this was after the killing.

But little can be added to this recital, except to say that there can be no possible doubt of the guilt of the defendant, and, while it is said that he was jealous of his mistress, even this poor excuse does not appear from the record, but it stands out unparalleled for barbarity, cruelty, and want of provocation. There is no proof, or even defense, of insanity, and the defendant is an unusual specimen of physical manhood — large, strong, and, the proof shows, was determined, collected, and intelligent. The judgment of the Court below must be affirmed.

It is, therefore, the judgment and sentence of the law, and of this Court, that the defendant, Dan Harris, be delivered to the Sheriff of Davidson County, to be by him safely kept in the county jail of said county until Wednesday, March 23, 1898, when, within legal hours, and in the manner prescribed by law, he will be hanged by the neck until he is dead.