JAMES J. FLYNN

*v.*

STATE OF TENNESSEE.

(*Jackson,* April Term, 1957.)

Opinion filed April 9, 1958.

John M. Heiskell, Memphis, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Flynn was indicted for second degree murder. This killing arose out of an automobile accident in which Flynn was operating a car under the influence of alcohol. For this crime he was found guilty of involuntary manslaughter and sentenced to six months in the County Workhouse.

The facts are not controverted on this appeal. The only question presented is whether or not the grand jury in Shelby County was impaneled in a constitutional manner. Able counsel for the plaintiff in error avers that the method of impaneling the grand jury of Shelby County is contrary to Code Section 40-1501, T.C.A., and, therefore, it violated Article XI, Section 8, of the Tennessee Constitution, that is, the method of impaneling the grand jury in Shelby County is contrary to the general law providing for their impaneling in other Counties of the State.

To the indictment the plaintiff in error first filed a plea in abatement. To this plea in abatement, the State demurred. The trial court sustained the demurrer and then the jury was impaneled according to law and the man tried.

The plea in abatement alleged that the grand jurors were individually selected and designated by the Judge of

Division I of the Criminal Court of Shelby County. The Court did not direct that the names of the jurors submitted to him by the jury commissioners be written on scrolls and placed in a box or other suitable receptacle and drawn out by a child of ten years of age or the Judge, and then designate the twelve whose names were first drawn as the grand jury for January, 1957, Term.

For a complete understanding of the issues and the conclusions that we have reached it is necessary that at least a brief legislative history of the various enactments concerning the establishment, duties and powers of the Criminal Court of Shelby County be enumerated.

Chapter 35, Acts of 1843-1844, established a Criminal Court in the City of Memphis. Section 4 of that Act provided in part:

"That the Judge of said court shall, from time to time, appoint a Grand and two Petit Juries to attend said Court, * * *."

The Legislature of 1853-1854, by Chapter 13 passed another Act establishing a criminal court for Memphis and Shelby County. By Section 5, this latter Act provided in part as follows:

"That the Judge of said court, from time to time, shall appoint a grand and two petit juries, to attend said court, * * *."

This Act was codified and carried in the Code of 1853 as Sections 4250 and 4253.

The Legislature of 1869-1870 by Chapter 28 of the Acts of said bodies passed an Act reorganizing the courts of Shelby County.

Judicial circuits were created throughout the State by Chapter 31 of the Acts of 1870. Section 2 provided that the Criminal Court of Shelby County established by the reorganization Act of 1869-1870 should, " * * * remain the same as now established by law, * * *."

An extraordinary Session of the Legislature of 1885 again divided into judicial circuits and chancery divisions the courts of Shelby County and created a special criminal court for that County to deal with the criminal cases arising in the County. A similar provision is carried in Chapter 427 of the Acts of 1899.

The Criminal Courts of Shelby County were reorganized again by Chapter 351 of the Acts of 1907. This Act created Division II of the Court which was given jurisdiction over misdemeanors. Division I of the Court was authorized to charge the grand jury and to receive its reports. This Act was amended by Chapter 445 of the Acts of 1909, which conferred the same jurisdiction upon Division II as had previously been granted Division I, but gave Division I authority to charge the grand jury and to receive its reports, and authorized the Judge of Division II to discharge duties concerning the grand jury in the absence or disqualification of the Judge of Division I.

By Chapter 230 of the Acts of 1905 the General Assembly created a jury commission applicable to Shelby County. This Act was practically the same as that of Chapter 124 of the Acts of 1901 which was applicable to Davidson and Shelby Counties. The 1905 Act authorized the Judge of the Criminal Court to impanel the grand jury. Section 16 of this Act provides that in the absence of fraud no irregularity with respect to the provisions of the chapter

shall affect the validity of the actions of the grand jury provided there has been a substantial compliance with the chapter.

This Act was amended in 1929 by Chapter 633 of the Private Acts of that year so that the Judge would be required to impanel the grand jury by lot substantially in the same manner as is now provided by Section 40-1501, T.C.A. However, by Chapter 447, Private Acts of 1931, this Private Act, Chapter 633 of the Private Acts of 1929, was repealed.

The reason that the latter two Acts are cited is to indicate the construction which the General Assembly placed upon the Jury Commission Act of 1905 above referred to. Apparently this body understood that the law required the Judge of the Criminal Court of Shelby County to appoint grand juries under the law. Otherwise, the General Assembly would not have found it necessary to enact Chapter 633 of the Private Acts of 1929 which required the Judge to impanel the jury substantially in accordance with Code Section 40-1501, T.C.A. The matter, though, being brought to their attention apparently they were dissatisfied with the requirements of this Act because two years later the Act was repealed. Therefore, it seems that the General Assembly construed the Shelby County Jury Act of 1905 as authorizing and directing that the Criminal Judge of Division I of the Criminal Court of Shelby County to appoint the members of the grand jury.

It is argued, and very reasonably so, that when it appears that Code Section 4253 of the 1858 Code was never repealed by any enactment except that of Chapter 633 of the Private Acts of 1929 which Act in itself was later repealed that this Code Section which is applicable to

Shelby and Davidson and other Counties authorizing the judge to appoint the grand jurors was then left in force. This Code Section of 1858, Code (4253) was not carried forward into the Code of 1932 or the present Tennessee Code Annotated but it is said, forcefully so by the State, that such an Act concerning special courts need not be codified and that the enactment of the new Code did not intend to repeal such Acts.

It is argued by the plaintiff in error that by the enactment of Chapter 28 of the 1869-1870 Act that this abolished the Criminal Courts of Shelby County and thereby denuded this Court of all of its special powers. This is the Act above referred to which reorganized all the Courts of Shelby County. This Act (Chapter 28 of the Acts of 1869-1870) does not in any way refer to Section 4253 of the Code of 1858 which authorized the Criminal Courts of Shelby, Davidson and Montgomery Counties for the Judge to appoint the grand jurors. Since no reference is made to this Code Section in either the caption or the body of the Act, the argument obviously is made that this Act as repealed the Code Section referred to by implication. This Court rejected a similar argument in regard to the power of the Criminal Judge of Davidson County in the case of *Balden v. State,* 122 Tenn. 704, 127 S.W. 134, where the Court very forcefully and on good authority adheres to the doctrine that repeals by implication are not favored.

In the Balden case it was contended that the Davidson County Jury Commission Law deprived the Criminal Judge of the power to appoint grand jurors, but this Court held that the power in Section 4253, Code of 1858, had not been repealed in 1909. The practice of criminal

judges appointing grand jurors has been approved in this State in the cases of *Harris v. State,* 100 Tenn. 287, 45 S.W. 438; *Balden v. State, supra;* and *State v. Edwards,* 174 Tenn. 542, 129 S.W. 2d 199.

■ In view of this legislative history, of the cases of this Court above cited construing such Acts, and particularly in view of the fact that the opinion in *Harris v. State,* referred to the Acts which were passed concerning the Shelby County Court when as a matter of fact the Act being construed in that case was the Act concerning the Davidson County Court it was a natural thing (both Acts were in substance the same) for the Criminal Judges of Shelby County to impanel their grand juries as they did and not to comply literally with Section 40-1501, T.C.A. Instead of placing this decision on the construction and interpretation of these Acts, and it is entirely possible that it might be done, we have concluded that without the question of a doubt that the impaneling of the grand jury as was done in this case in Shelby County constituted a *de facto* grand jury at least. And acts of such a grand jury which are not tainted with fraud are valid.

■ Section 40-1501, T.C.A., began with the Acts of 1779, Chapter 6, Section 12, and was carried as it is today with the exception of some very slight modifications in the Code of 1858. This Code Section (40-1501, T.C.A.) is merely directory and not mandatory. *Workman v. State,* 36 Tenn. 425; *Pybos v. State,* 22 Tenn. 49; *Epperson v. State,* 73 Tenn. 291.

■ It is well recognized that:

" * * * where the provisions of the statute are merely directory, and particularly where the chief purpose of the prescribed method is to distribute equally the burden of jury service, a departure from that method does not, in the absence of fraud or prejudice to the interests of the party who questions the regularity of the selection, render the grand jury illegal. The reason for this rule is that since the grand jurors do not try the case, but merely charge the accused, the manner of their selection is of no consequence to him; he is entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections." 24 Am.Jur., p. 845, Sec. 19.

This language is almost the verbatim language used by the Circuit Court of Appeals in the case of *United States v. Glasser,* 7 Cir., 16 F. 2d 690, which was affirmed by the Supreme Court of the United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

"Under the common law, an accused person may interpose many technical objections to an indictment and to the organization of the grand jury by which it was found, even though they are wholly devoid of substantial merit. These overrefined technicalities are the outgrowth of a system of criminal law of unreasonable severity, and of a humane desire on the part of courts to shield those charged with crime from excessive and cruel punishment." 24 Am.Jur., p. 850, Section 26.

The cases last above cited of *Workman, Pybos,* and *Epperson v. State,* reject these old technical arguments that were advanced in the early stages for the reason just said in the last quotation of American Jurisprudence, because these reasons do not now lie. Most, if not all modern cases indicate that any departure as here from a statutory requirement, where the statute is directory as this is, is not prejudicial to the accused as long as the indictment does nothing to indicate that the indictment was tainted by bias or prejudice by the selecting officer. This Court applied this same reasoning in reference to a petit or trial jury in *Manning v. State,* 155 Tenn. 266, 292 S.W. 451.

This record is devoid of any adverse accusations against this grand jury. In a case of the kind here where the accused is not prejudiced, where the grand juries are not incompetent (the trial judge selected these grand jurors from the panel presented by the Jury Commission), where their selection is not corrupt, or where there has been no invasion of any substantial right, substantial compliance is all that is necessary with the laws concerning the impaneling of grand juries. The text, 38 C.J.S. Grand Juries sec. 9, p. 996, abundantly substantiates this statement with authorities from Federal and State Courts all over the United States.

It is very earnestly and forcefully argued that the way the grand jury here was impaneled being contrary to the general law of the State (Section 40-1501, T.C.A.) that it violates Article XI, Section 8 of the Constitution. In support of this argument the case of *Nichols v. King,* 190 Tenn. 573, 230 S.W. 2d 1006, is cited as controlling and authority for this argument. We must respectfully

disagree with counsel because in our judgment the Nichols case is not in point under the facts of the present case. In the present case, the plaintiff in error does not even attempt to demonstrate or point out how his rights had been adversely affected as a result of the appointment of this grand jury by the Criminal Judge. In the Nichols case the plaintiff might have been adversely affected if he had been required to file his declaration a different way from others, thus the difference. In the case at Bar the problem deals with a statute which is procedural only and does not involve a substantive right as did that in the Nichols case. The present case deals with the powers and authority of the specially constituted court operating the Criminal Court of Shelby County, and deals with a Statute (Section 40-1501, T.C.A.) which is directory and not mandatory. We must thus reject this argument.

Then it is said by the plaintiff in error that there is no such thing in Tennessee as a *de facto* grand jury. This statement is based upon a like statement made by this Court speaking through a special Justice, in the case of *Roberts v. State,* 147 Tenn. 323, 247 S.W. 101. We have Shepardized the Roberts case down to the present time from the beginning of the Shepard Annotater. It has never been cited from the time it was published until the present, according to Shepard. In the work on Grand Juries in 38 C.J.S. sec. 1, at page 983, the author of that work cites this case, that is *Roberts v. State, supra,* as the only State case in the United States which says that there is no such thing as a *de facto* grand jury.

We have read and re-read the Roberts case and in our judgment the statement that there is no such thing as a

*de facto* grand jury is entirely unnecessary to the decision of the case. We must conclude that such a statement is, insofar as the *de facto* grand jury question is concerned, *obiter dictum.*

■ The better rule and that which is supported by reason and authority is that there may be a *de facto* grand jury and when such a jury acts in the absence of fraud or prejudice or what-not, its actions are good. As authority for this proposition see *Ex parte Haymond,* 91 Cal. 545, 27 P. 859; *People v. Petrea,* 92 N.Y. 128, and *State v. Wescott,* 194 Wis. 410, 217 N.W. 283, where at page 286 the Supreme Court of Wisconsin says:

"A grand jury which continues to function and present indictments after the term at which it was called is a *de facto* grand jury, and its indictments are as valid as those presented by the *de jure* grand jury." Citing authorities.

The Supreme Court of Michigan in *People v. Morgan,* 133 Mich. 550, 95 N.W. 542, reached the conclusion that the grand jury was *de facto* and its indictments were valid.

There are many other cases from various jurisdictions which hold to the same effect. This in effect is holding that the grand jury was a *de facto,* not a *de jure* grand jury and yet those indictments brought in by that *de facto* grand jury are valid. To us this makes sense. No one is done an injustice by this holding.

■ ■ The statutes regulating the selection of grand juries are enacted for public reasons rather than for the benefit of any individual; they are intended to facilitate

the selection of a jury, to equalize the burden of jury service, and to preclude the packing of juries or the selection of jurors with reference to particular matters and causes likely to be submitted to them for determination. When we look at grand juries from this viewpoint and then take into consideration what a *de facto* officer may do, we can and must readily appreciate that there may and is a *de facto* grand jury which it clearly was in this case. There being no prejudice or bias shown this indictment was valid.

Thus it is for these reasons we must overrule all assignments of error and affirm the judgment of the trial court.