**Thomas Frank CARROLL**

v.

**William S. NEIL, Warden, Tennessee State Penitentiary.**

**Civ. A. No. 6741.**

United States District Court
E. D. Tennessee, N. D.

Oct. 10, 1969.

**1328**

Thomas Frank Carroll, in pro. per.

Elmer Davies, Jr., Asst. Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. TAYLOR, Chief Judge.

Thomas Frank Carroll has filed a thirty-four page petition for a habeas corpus writ in which he states (1) his arrest was illegal and unconstitutional because he was arrested without a warrant and probable cause did not exist for his arrest; (2) his constitutional rights were violated in that he was denied counsel; (3) he was denied compulsory process for procuring witnesses in his favor and one of his witnesses was denied the right to testify; (Under this topic petitioner claims that the trial court erred in not permitting his witness, Marlin Beach,

to testify.) (4) he was illegally indicted by an unsworn grand jury; and, finally, (5) illegal and inadmissible evidence was knowingly and illegally used to procure his conviction.

The record shows that he was indicted for first degree murder in Roane County on June 29, 1965 and in November of that year the jury found him guilty and fixed his punishment at ninety-nine years and one day. His motion for a new trial was overruled on March 15, 1966. An appeal was taken to the Supreme Court and that Court affirmed the conviction on December 9, 1966. Petitioner filed a petition for writ of habeas corpus in the Sixth Circuit of Davidson County on May 16, 1967 and the Chief Justice of the Tennessee Supreme Court ordered his petition transferred to the Criminal Court of Roane County on June 5, 1967. Judge Lloyd G. McCluen held an evidentiary hearing on July 21, 1967, at which petitioner was represented by appointed counsel. The petition was denied on July 25, 1967. The Court of Criminal Appeals affirmed the holding of Judge McCluen. The petition for certiorari from the holding of Judge McCluen was denied on July 7, 1969.

■ Petitioner does not appear to have claimed that his arrest was illegal in the state courts and if this is true, he has failed to exhaust available state remedies on that point. However, we have examined the bill of exceptions in the state court, which shows that when petitioner's mother could not be found the Sheriff and Coroner of Roane County, after receiving a telephone call from a suspicious nearby neighbor of the victim, visited petitioner's home. The sheriff saw the petitioner acting in a suspicious manner going through his mother's pocketbook, found blood on the floor of the house and also on the person of the petitioner, and found that the murder victim was not at a neighbor's house where petitioner stated she had gone. Petitioner stated that the blood came from his hand which he had cut while doing some work. While the Sheriff was engaged in

conversation with petitioner, the Coroner went to the well, which was a short distance from the house, and found the body of his mother. It was under these circumstances that petitioner was placed under arrest which, in the opinion of the Court, were sufficient to create probable cause for arrest.

■ As to the petitioner's claim that he was denied counsel for a period of four months following his arrest, Sheriff Stanley testified that he advised petitioner that he had the right to have an attorney and that he would make a telephone available to him if he wanted to call an attorney, and petitioner advised the Sheriff that he did not want an attorney. He claimed in the state court that he was deprived of his constitutional rights in that he did not have a preliminary hearing and counsel was not appointed to assist him in connection with such a hearing. The Court of Criminal Appeals, State ex rel. Carroll v. Henderson, 443 S.W.2d 689 held that there is no constitutional requirement for a preliminary hearing in the state court, citing State ex rel. Carlson v. State, 219 Tenn. 80, 407 S.W.2d 165; State ex rel. Reed v. Heer, 218 Tenn. 338, 403 S.W.2d 310; Dillard v. Bomar, 342 F.2d 789 (C.A.6, 1965).

When petitioner's case was at a crucial stage, the Criminal Judge of Roane County appointed three attorneys to represent him in his trial in the Circuit Court and the record shows that these attorneys gave him competent representation in that Court. Although the record shows that the General Sessions Judge offered to appoint him an attorney when he was taken before that Judge for the fixing of his bond, he stated to that Judge that he expected to employ his own attorneys and that he did not want the Court to appoint him one.

As previously indicated, Sheriff Stanley had advised him that he was entitled to an attorney immediately after he was arrested. Prior to the trial in the Criminal Court of Roane County, petitioner's case had not reached a crucial stage and he was not deprived of a federal constitutional right by not having an attorney at that time.

■ Petitioner's claim that he was denied compulsory process for procuring defense witnesses is without merit. Those witnesses that he asked his attorneys to summon were summoned and appeared at the trial. However, Mr. Leffew, one of his attorneys, released those which had been summoned and whose testimony would not have been helpful to petitioner. When an accused's witnesses are released by his own attorney in a state proceeding, he cannot successfully contend that the action of such attorney deprived him of a federal constitutional right. He made no complaint to the state court about the release of his witnesses. His first complaint appears to have been made long after his conviction.

Petitioner also complains of the action of the Court in not permitting the witness Marlin Beach to testify, who appeared in Court pursuant to a summons issued by the defense. The transcript of the record shows the following with respect to Mr. Beach:

"MR. MARLIN BEACH, a witness for the Defendant, was called and being duly sworn, was examined and testified as follows on DIRECT EXAMINATION BY MR. E. EUGENE EBLEN:

"Q State your name to the court.

"A Marlin Beach

"Q Mr. Beach, where do you work?

"A Sexton Chevrolet-Cadillac in Harriman.

"Q In what capacity?

"A Salesman.

THE COURT: Did you hear the defendant testify awhile ago?

"A Yes Sir.

THE COURT: Did you hear him testify about going to this Chevrolet Company?

"A Yes Sir.

THE COURT: He couldn't—

GENERAL WATKINS: I object to it please the Court.

THE COURT: All right. You will have to step down. You were in the courtroom at that time?

"A Yes sir, I was.

THE COURT: All right. You will have to step down."

No objection was taken to the Court's action in refusing to permit Beach to testify. This ground was not made the basis of a motion for a new trial. Under the Tennessee practice in criminal cases, before the trial court can be put in error for a ruling, exception must be made to that ruling and the alleged erroneous ruling made the basis for a motion for a new trial. Beach was called as a witness in the habeas corpus hearing. He stated, in substance, that if he had testified he would have stated that he was somewhat familiar with the whereabouts of the accused on the day of the murder. The Court of Criminal Appeals in dealing with this question stated, in part:

"In the habeas corpus hearing, Beach was permitted to testify that when he was called as a defense witness in the original trial he was prepared to testify concerning the whereabouts of the petitioner on the day of the homicide. Obviously the purpose of offering this witness was to buttress the petitioner's defense of alibi. However, no objection was made to the trial court's action in not allowing him to testify, nor was it assigned as error in the motion for a new trial or in the Supreme Court. It may be said that we do not perceive the reason for the trial court's action. Smith v. State, 72 Tenn. 428; Ezell v. State, 220 Tenn. 11, 313 S.W.2d 678. Nevertheless, we must adhere to the settled law of this State that the appellate court can review only questions presented for determination in the lower court. In Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314, the Court stated this rule as follows:

"' * * * We, of course, cannot consider these assignments which were not incorporated in the motion for a new trial or were not in any manner brought to the attention of the trial judge because under Rule 14, paragraph (5), as reported in 185 Tenn., and under the case of Hobbs v. State, 121 Tenn. 413, 118 S.W. 262, when the assignments are not included in the motion for a new trial we should not consider them.' "

■■ In the opinion of this Court, petitioner was not deprived of a federal constitutional right by the action of the trial court's refusal to allow the witness Beach to testify under the circumstances shown in the record. The record shows that witness Beach was under the rule and that he came into the courtroom and listened to another witness testify on the subject about which he was to testify and the Court refused to permit him to testify because he had violated the rule. Federal courts have not approved of disqualification for violation of the rule. Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); United States v. Schaefer, 299 F.2d 625, 14 A.L. R.2d 1 (C.A.7, 1962); Taylor v. United States, 388 F.2d 786 (C.A.9, 1968). However, the decision rests within the discretion of the trial judge and does not reach constitutional levels.

Petitioner claims that he was indicted by an unsworn grand jury. This question was dealt with by the Supreme Court of Tennessee while considering petitioner's appeal in that Court.

T.C.A. § 40–1503, which prescribes the term of service for grand juries, provides:

"* * * the jurors composing the grand jury shall attend the court until discharged by the judge, or the term expires."

The Supreme Court, in discussing petitioner's insistence relating to this statute, said:

"It is insisted by plaintiff in error that the March, 1965 Term of the Criminal Court of Roane County expired when the trial judge convened

court in regular session in another county. It is pointed out that by T.C.A. § 16–212, the Criminal Court for the Fourth Circuit is to be held, inter alia, on the First Monday in April of each year in Blount County, Tennessee. Plaintiff in error insists, therefore, that the March, 1965 Term of the Criminal Court in Roane County ended not later than the First Monday in April, 1965 when the Criminal Judge of the Circuit in which Roane County lies opened court in Blount County.

"This Court has recently dealt with the problem presented in this case in an opinion prepared for the Court by Mr. Justice Chattin, in the case of Powers v. State, released November 15, 1966. In the present case, as in the Powers case, it does not appear that another grand jury had yet been sworn and had entered upon its duties on July 6, 1965, before the report of the March grand jury was received and filed. A suggestion of diminution of the record has been filed in this Court, accompanied by minutes of the Criminal Court of Roane County for Tuesday, July 6, 1965. No order has been entered in this Court sustaining the suggested diminution of the record. An examination of the purported minutes filed, however, reveals that a new grand jury for the July, 1965 Term of the Criminal Court of Roane County was 'selected' on July 6, 1965. The minutes do not show, however, that these men were inducted into office or that they entered upon their duties on July 6, 1965. Nor does the record reflect that the Criminal Court of Roane County had closed its minutes on March 12, 1965, as suggested in the brief of counsel for plaintiff in error. As far as the record before this Court discloses, the minutes of the Criminal Court of Roane County were left open for further orders after the judge had left the county, which date is said in the brief to have been March 12, 1965, and the minutes for the March, 1965 Term of the Criminal Court apparently remained open until the new term of court convened on July 6, 1965. Under these circumstances, we know of no reason why the grand jury for the March, 1965 Term of the Criminal Court could not have been reconvened on June 29, to hear evidence, as apparently must have been the case. As stated, there is nothing to indicate that any other grand jury had been empaneled between the beginning of the March Term and the beginning of the July Term.

"This Court held in the Powers case that under these circumstances, the old grand jury was at least a 'de facto' grand jury and that the filing of its report on the first day of the term after expiration of its period of service did not invalidate the indictment. In the Powers case, the Court relied upon the earlier holding in Flynn v. State, 203 Tenn. 337, 313 S.W.2d 348 (1958). In the Flynn case, the Court said:

" 'The better rule and that which is supported by reason and authority is that there may be a de facto grand jury and when such a jury acts in the absence of fraud or prejudice or what-not, its actions are good. 203 Tenn. 348.'

"Inasmuch as the record affirmatively shows that the finding of the indictment and the presentation of witnesses and evidence took place in June, 1965, at which time there was no other grand jury purporting to act in Roane County, and that the return was filed on the first day of the next term of court in Roane County, we hold that the indictment was valid. The assignment of error pertaining to the late return of the indictment is, therefore, overruled."

The Tennessee Court of Criminal Appeals, in dealing with this same question, stated:

" * * * In the first place, the writ of habeas corpus may not be employed to test the validity of the indictment upon which the original conviction was based. Knewel v. Egan, 268 U.S. 442,

446, 45 S.Ct. 522, 69 L.Ed. 1036; Underwood v. Bomar, 335 F.2d 783 (6th Cir., 1964). Beyond that, however, the petitioner raised the same question in his appeal to the Supreme Court and it was there decided adversely to his contentions. It is fundamental that habeas corpus may not be used to resurrect and relitigate and review matters raised and disposed of in a direct appeal from a conviction. State ex rel. Brown v. Newell, 216 Tenn. 284, 391 S.W.2d 667; Spaulding v. Taylor, 336 F.2d 192 (10th Cir., 1964)."

■ This Court concurs in the views of the state courts on this subject. In the opinion of this Court, petitioner was not deprived of a federal constitutional right by the grand jury that returned an indictment against him. If it was not a *de jure* grand jury, it was certainly a *de facto* grand jury.

Petitioner's fifth and final contention is that illegal and inadmissible evidence was deliberately used by the prosecution to secure his conviction. The basis of this insistence is that: (a) The State utilized incriminating statements made by the petitioner which the State refused to turn over to petitioner and his attorneys prior to trial. In that connection, petitioner asserts that his attorneys asked for any oral or written self-incriminating statements made by the petitioner and that the State failed or refused to produce such statements, insisting that petitioner made no incriminating statements. (b) During the trial, the State presented pictures of petitioner's home wherein the murder allegedly was committed. "However, these said pictures were unclassified and, there was no proof entered to the effect that such pictures were of the petitioner's home. Other than sole statements as made by the sheriff, in regard to such said pictures." (c) During the trial the State presented a large picture of petitioner's mother who was the murder victim, which picture had no bearing on the merits of the case and was prejudicial to petitioner's rights. (d) That the trial court ordered that the witnesses be sequestered but that the Roane County Sheriff was allowed to remain in the courtroom while the other witnesses testified. (e) That the State presented several items which had blood on them and which it claimed were taken from the petitioner's home where the murder occurred, but the blood was never compared with the blood of the alleged victim nor petitioner's blood. No blood samples were ever made of the deceased or of petitioner. (f) That petitioner in an effort to prove that he was not guilty pleaded with the Roane County Sheriff to take a sample of his blood and send to Washington for examination, to compare with the blood found on petitioner's pants. However, the Sheriff refused.

The Supreme Court found that the photographs of which petitioner complained were identified by the Sheriff of Roane County and by Walter Bearden of the Tennessee Bureau of Identification without objection. As to the statements made by the accused, the Supreme Court pointed out that the Sheriff stated that petitioner admitted nothing. Sheriff Stanley appeared as a rebuttal witness and the defense's objections were sustained when the Sheriff's testimony appeared to exceed rebuttal testimony. Under these circumstances, it does not appear that the rule was violated excluding witnesses from the courtroom.

■ The Sheriff's failure to submit samples of deceased's blood and of petitioner's blood for laboratory tests does not appear to have violated petitioner's federal constitutional rights.

Finally, we have carefully examined the entire State record in this case, having read the proof contained in the bill of exceptions that was introduced during the trial on the merits; the evidence introduced in the State habeas corpus proceedings; the opinion of the Supreme Court affirming the judgment of the lower court; the opinion of Trial Judge Lloyd G. McCluen rendered in the State habeas corpus proceeding, whose findings are adequate; and the opinion of the State Criminal Court of Appeals from which we are convinced that the merits of the factual disputes were re-

solved in the State Court hearing; that the fact-finding procedures employed by the State Court were adequate to afford a full and fair hearing; that the material facts were adequately developed at the State Court hearing; that the State Court had jurisdiction over the subject matter and of the person in the State Court proceeding; that the applicant was adequately represented by State appointed counsel during such proceeding; that applicant received a full, fair and adequate hearing in the State Court proceeding and that applicant was not denied due process of law in the State Court proceeding; that the record of the State Court proceeding in which the determination of the factual issues was made has been produced and filed in this Court, from all of which this Court concludes that such factual determination by the State Courts is fairly supported by the record and that an oral hearing to petitioner is not necessary for a proper determination of his present application for a writ of habeas corpus (see 28 U.S.C. § 2254) and being of the opinion that petitioner has not been deprived of a federal constitutional right, it is, therefore, ordered that the application for writ of habeas corpus be, and same hereby is, denied.