Jeffry **CHEAIRS** et al., Plaintiffs-in-Error,

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

May 10, 1976.

Certiorari Denied by Supreme Court Oct. 4, 1976.

Albert P. Marks, Clarksville, for Cheairs.

Collier Goodlett, Jr., Clarksville, for Marcheterre.

Laurence McMillan, Clarksville, for Burch.

Frank J. Runyon, Clarksville, for Unthank.

Hugh R. Poland, Jr., Clarksville, for Couey.

Paul D. Welker, Clarksville, for Gillmore.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Noel R. Bagwell, Dist. Atty. Gen., John J. Hestle, Asst. Dist. Atty. Gen., Clarksville, for defendant-in-error.

## OPINION

WALKER, Presiding Judge.

Jeffry Cheairs, Daniel Marcheterre, Jerry Burch, Robert Unthank and Paul Couey were convicted in Montgomery County of first degree murder of Kaoru Y. Smith and sentenced to life imprisonment. Michael Gillmore was convicted of being an accessory before the fact of first degree murder and was also sentenced to life imprisonment. All six appeal in error.

Marcheterre says the trial court erred in refusing to grant a change of venue. He contends newspaper publicity was so inflammatory as to deprive him of a fair trial. He cites no authority in support of his claim. Four months intervened between the principal publicity he claims damaged him and his trial. No abuse of discretion appears in this record. See *Broz v. State,* 4 Tenn.Cr.App. 457, 472 S.W.2d 907.

All defendants complain that they did not receive a preliminary hearing and that their motions to dismiss the indictment for that reason should have been sustained.

The defendants were arrested on warrants charging that they murdered Smith on September 7, 1973. On September 10 the general sessions judge fixed bail, appointed attorneys for a number of them and set a preliminary hearing for September 28. In the meantime the trial judge, on application of the district attorney general, called the grand jury of the regular August term back into session and it indicted these defendants September 20. The defendants argue that they were entitled to a preliminary hearing under TCA 40–1131.

The indictment was returned prior to the 1974 amendment, the effective date of which was April 4, 1974. Following this indictment there was no right to a preliminary hearing. *Shadden v. State,* Tenn.Cr.App., 488 S.W.2d 54; *McCracken v. State,* Tenn.Cr.App., 529 S.W.2d 724. The trial judge properly reconvened the grand jury under TCA 40–1515 to consider criminal offenses committed in his jurisdiction and it was not necessary to await a preliminary hearing. The trial judge correctly denied the motions to dismiss the indictment.

All defendants except Marcheterre say the court erred in limiting them to eight peremptory challenges rather than 15 provided for capital cases.

The death penalty was not in effect at the time of this trial in April 1974 and, of course, the trial judge did not instruct the jury on the death penalty. The defendants were entitled to only eight peremptory challenges. *Jenkins v. State,* Tenn.Cr.App., 509 S.W.2d 240.

The same defendants complain that the trial judge refused to accept their challenges for cause and erred in taking over the questioning of jurors.

In its brief the state says that the defendants did not exhaust their peremptory challenges and are therefore precluded from complaining. We find from our examination of the record that each defendant used his eight peremptory challenges, making a total of 48, and that in addition each used all his peremptory challenges permitted on the alternate juror.

Selection of the jury took six days trial time and covers 1314 pages of the record. The trial judge properly took part in the examination, particularly when jurors did not understand their duties. This is part of the function of a judge. *State v. Jefferson*, Tenn., 529 S.W.2d 674, 684 (1975). TCA 40–2507 contemplates the trial judge's inquiry to determine if a juror may be fair.

None of the prospective jurors complained of were seated; challenges were exercised against them. The defendants all had a fair jury and accepted it. They do not claim any prejudiced juror was seated nor that any juror was anything but fair. From our study of the jurors on their voir dire, all who were finally accepted were fair and impartial. The defendants cite no authority on their contention. We find no prejudice on the jury selection and these assignments are overruled. See *Layman v. State*, 1 Tenn.Cr.App. 83, 429 S.W.2d 832.

Each defendant contends the evidence is insufficient to support the verdict against him.

The state's evidence shows that Gillmore is president of the Aliens Motorcycle Club, generally referred to as a gang, and the other defendants are members or closely associated with it. On September 7, 1973, some trouble developed at the Palms nightclub between Couey and the deceased, after which the club members forced Smith to go to their clubhouse where he undertook to fight the entire group. Smith was a karate expert and was having success with them when one Robert Williams struck him in the back of the head with a chain he called a medium-sized dog chain and which is otherwise described in the record as a log chain. Burch also struck him with a chain. Smith

tried to escape from the group but was pursued and returned. He had kicked Trunk, one of his attackers, in the ribs, sending him to the hospital. This caused resentment on the part of the members and Gillmore ordered his execution.

The evidence shows that Gillmore ordered Smith killed and that the other five defendants, armed with a .22 rifle, a sawed-off shotgun and a bowie knife, took Smith in his own car to the country where Cheairs shot him with the others aiding and abetting in the murder. They then returned and reported to Gillmore that they had carried out his orders.

None of the defendants testified. Cheairs offered two character witnesses.

Gillmore joined in the fight with Smith at the clubhouse. Candy Lott, Vickie Cox, and Mike Lowrie heard him tell the club members that he did not want Smith seen any more. He pointed at those he expected to act. When Candy Lott asked him why Smith had to be shot, he replied that Smith would bring 50 karate experts and beat them. He refused her entreaty to spare Smith.

Cheairs was at the fight and in the car that took Smith to his death. Randolph Payne and Williams heard him admit that he shot Smith. He gave the murder weapon to Richard Stone to hide.

Burch was one of the combatants in the gang fight and threatened to kill Smith with a shotgun. He said that the gang should not release Smith because he had injured Trunk badly. He was in the car that took Smith away. Candy Lott, then his girl friend, saw him return with the group that reported to Gillmore that the job was done. He admitted his participation to her. He told her she would not think he was a man if he did not go and he told her Smith was shot 19 times.

Unthank had a bowie knife and was in the car. He admitted to Williams that he was at the scene of the murder and that someone told the person with the rifle to shoot Smith in the head. The jury did not believe his statement to Williams that he

thought they were taking Smith to the hospital and that he tried to walk away from the killing.

Steve Sabo said that Couey was badly beaten by Smith at the fight. Lowrie saw him in the car taking Smith away and he was in the group reporting to Gillmore on their return.

Marcheterre was present when the fight occurred and was one of those receiving Gillmore's orders. Gillmore told him and other club members that "We have to get it done" and some of them went for the gun to kill Smith. Vickie Cox then saw Marcheterre leave the building with Smith on the way to the car although she did not see the car actually leave. Six men including Smith left in Smith's car where Lowrie says Cheairs, Unthank, Couey and Burch were waiting. He did not name the sixth person he says was in the car but Marcheterre was in the group who, on the return, went to Gillmore to report that his orders had been obeyed. Candy Lott said five men (Marcheterre, Burch, Couey, Cheairs and another) went together to tell Gillmore that the job was done. The circumstantial evidence shows that Marcheterre was the sixth person in the car and that he was aiding and abetting Cheairs in the killing.

The evidence supports the verdict of guilty against each of the defendants and does not preponderate against it and in favor of their innocence. The assignments on the weight of the evidence are overruled as are those of Cheairs, Marcheterre and Couey saying that the verdicts show passion, prejudice and caprice.

■ All but Marcheterre complain that there are omissions and inaccuracies in the transcript. In this 2000-page record there are some places where the court reporter found the recording inaudible. Witnesses at trials are sometimes inaudible whether the record is taken by machine or shorthand reporter. We find no prejudice here and this assignment is overruled. See

*Phipps v. State,* 3 Tenn.Cr.App. 574, 464 S.W.2d 341. The trial judge gave frequent instructions limiting evidence and we find no merit in the contention that any defendant was prejudiced by any evidence. We also find no error in the admission of photographs into evidence.

■ Unthank says the trial judge should have granted a mistrial when the prosecutor commented on his failure to testify.

Unthank's counsel in argument told the jury that he was present in the car and at the scene of the killing and contended he thought they were taking Smith to the hospital. The district attorney general's argument was in reply to this argument and was not a comment on Unthank's failure to testify. The assignment is without merit.

■ We find no prejudice in the defendants' failure to have a transcript of the testimony within 15 days after the trial and before their motions for new trial were heard.

■ We likewise find no merit in Cheairs' claim that he should have been given an examination by two licensed physicians as to whether he was mentally ill and in need of care and treatment. He cites no authority. The court considered this motion and denied it with an order giving his reasons. There is no claim that this defendant was insane at the time of the homicide or at the time of the trial.

All assignments are overruled and the judgment is affirmed as to all defendants.

RUSSELL and DAUGHTREY, JJ., concur.