# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 13, 2002 Session

## STATE OF TENNESSEE v. DANNY TROUT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-T-1162      Cheryl Blackburn and Steve R. Dozier, Judges**

─────────────

**No. M2001-00462-CCA-R3-CD - Filed April 24, 2002**

─────────────

The defendant was convicted by a Davidson County jury of DUI. In this appeal, he alleges the Vehicular Crimes Grand Jury, which was convened in Davidson County to consider only vehicle-related crimes, was illegally empaneled. He further contends the investigatory stop of his automobile was improper. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

Joe G. Riley, J., delivered the opinion of the court, in which Thomas T. Woodall and John Everett Williams, JJ., joined.

David E. Brandon (at trial and on appeal) and Peter D. Heil (on appeal), Nashville, Tennessee, for the appellant, Danny Trout.

Paul G. Summers, Attorney General and Reporter; Gill Robert Geldreich, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and David G. Vorhaus and Ed Ryan, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### VEHICULAR CRIMES GRAND JURY

#### A. Procedural History

Defendant was indicted for DUI by the Vehicular Crimes Grand Jury, as it is termed in Davidson County. The judge presiding over the Vehicular Crimes Grand Jury is the Circuit Court Judge of Division VII, has concurrent chancery jurisdiction, has exclusive probate jurisdiction, and sits by interchange or designation in some criminal matters. The foreperson of this grand jury is specially appointed by the circuit court judge, and the grand jurors are selected randomly from the jury pool. The only cases presented to the Vehicular Crimes Grand Jury are those cases which in

some manner involve vehicular crimes. The regular grand jury, coordinated by the criminal court judges, considers all other criminal matters.

Following defendant's indictment by the Vehicular Crimes Grand Jury, defendant moved for dismissal of the indictment alleging the grand jury was empaneled contrary to state law. The trial court denied the motion.

**B. Analysis**

Defendant contends the Vehicular Crimes Grand Jury was empaneled contrary to the general provisions of state law. Defendant recognizes the circuit court judge of Davidson County was authorized to empanel grand juries pursuant to Chapter 31 of the 1849-50 Tennessee Private Acts. However, defendant contends this legislation was repealed by implication with the enactment of Chapter 53 of the Private Acts of 1947. The 1947 Private Act provides comprehensive requirements for jury selection in Davidson County and makes no mention of the special authority granted the circuit court judge in the 1849-50 Private Act.

Nevertheless, defendant recognizes that this court has expressly ruled against his position in State v. McFarland, 638 S.W.2d 416, 417 (Tenn. Crim. App. 1982). He asks us to overrule McFarland; we decline. McFarland was decided by this court in 1982; permission to appeal was denied by the Supreme Court of Tennessee on June 14, 1982; and a majority of this court voted to publish the opinion. Although the Supreme Court of Tennessee is not necessarily committed to all views expressed in an opinion of an intermediate appellate court when discretionary review is denied, *see* Swift v. Kirby, 737 S.W.2d 271, 277 (Tenn. 1987), our supreme court has stated that

> the published opinions of the intermediate appellate courts are opinions which have precedential value and may be relied upon by the bench and bar of this state as representing the present state of the law with the same confidence and reliability as the published opinions of this Court, so long as [they] are not overruled or modified by subsequent decisions.

Meadows v. State, 849 S.W.2d 748, 752 (Tenn. 1993). We are unaware of anything that has occurred after McFarland, either legislatively or judicially, to call its holding into question.

Rule 4(H)(2) of the Rules of the Supreme Court of Tennessee provides that opinions reported in the official reporter are to be considered controlling authority unless the opinion is reversed or modified by a court of competent jurisdiction. Although this panel agrees defendant's argument on the merits is indeed persuasive, it is not so persuasive as to require us to disregard or overrule this controlling authority. We decline to do so and believe it to be more appropriate for this issue to be addressed by the Supreme Court of Tennessee.

Defendant further argues the Vehicular Crimes Grand Jury was empaneled contrary to Rule 6 of the Tennessee Rules of Criminal Procedure. Although McFarland did not address Rule 6, this rule was in effect at the time McFarland was decided. Regardless, the rule provides grand juries may be empaneled by any "judge of the court authorized by law" to do so. Tenn. R. Crim. P. 6(a)(1). Thus, if McFarland is controlling in its determination that the circuit court judge of Davidson County has such authority, we see no violation of Rule 6.

Defendant next contends the Vehicular Crimes Grand Jury is illegal since it is designated to hear only "particular matters and causes." We respectfully disagree.

Defendant relies upon the following statement in Flynn v. State:

> The statutes regulating the selection of grand juries are enacted for public reasons rather than for the benefit of any individual; they are intended to facilitate the selection of a jury, to equalize the burden of jury service, and to preclude the packing of juries or *the selection of jurors with reference to particular matters and causes likely to be submitted to them for determination*.

203 Tenn. 337, 313 S.W.2d 248, 253 (1958) (emphasis added). The actual holding in Flynn is that a grand jury empaneled contrary to the statutorily prescribed method was a *de facto* grand jury whose actions were valid. 313 S.W.2d at 251. The quoted language in Flynn was not determinative of the issue presented, and we believe this literal language has been taken out of context.

Our present rule authorizes the empaneling of a grand jury during the regular term or any special term. Tenn. R. Crim. P. 6(a)(1), (2). Furthermore, concurrent grand juries are authorized. *Id*. at (3). A statute authorizes the reconvening of the grand jury to consider "a criminal offense which is a felony [that] has been committed in the jurisdiction." Tenn. Code Ann. § 40-12-103 (emphasis added); *see generally* Cheairs v. State, 543 S.W.2d 70, 72 (Tenn. Crim. App. 1976). Furthermore, we presently have statutory authorization for the use of an "investigative grand jury" to consider specified kinds of criminal activity. *See* Tenn. Code Ann. § 40-12-201(a) (specifying money laundering, obscenity matters relating to minors, drugs, official misconduct, bribery, racketeering, gambling and governmental interference).

We find nothing in our law that would prohibit the empaneling of a grand jury in which a particular kind of case is presented. However, we also find nothing in our law that would prevent such a grand jury from considering other matters should it desire to do so. *See* Tenn. R. Crim. P. 6(e)(1), (2) (setting forth the duty of the grand jury to not only consider matters submitted to it by the district attorney general, but also criminal offenses brought to its attention by a member of the grand jury); Tenn. Code Ann. § 40-12-206(c)(2) (directing an "investigative grand jury" to consider the crimes specified in the petition, but not "preventing indictment for any offenses found by the grand jury to have occurred in the course of its investigation").

For these reasons, we decline to grant defendant relief on this issue.

## INVESTIGATORY STOP

Defendant contends the initial stop of his vehicle was an improper investigatory stop; therefore, all evidence against him should have been suppressed. Again, we respectfully disagree.

### A. Testimony/Ruling

At the motion to suppress Officer David Slessinger of the Metropolitan Nashville Police Department testified that at 7:55 a. m. on January 24, 1998, he was following defendant's car on Hermitage Avenue in Nashville. The officer indicated the defendant's car was swerving back and forth within his lane and, on two separate occasions, crossed the center line. Based upon his observations, the officer made a traffic stop. The officer testified the defendant smelled of alcohol, had bloodshot eyes, had slurred speech, and was very unsteady on his feet. The officer further testified the defendant performed poorly on the field sobriety tests and was arrested for driving under the influence. The defendant's blood alcohol level subsequently tested 0.14%.

The defendant testified at the suppression hearing that upon being stopped, he informed the officer that he had the flu. The defendant offered no testimony concerning the manner in which he was driving prior to the stop.

The trial court found the officer had proper grounds for an investigatory stop and denied the motion to suppress.

### B. Analysis

A policeman may make an investigatory stop when the officer has a reasonable suspicion, supported by articulable and specific facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *see also* United States v. Arvizu, ___ U.S. ___, ___, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). For a court to determine whether a policeman's reasonable suspicion is supported by articulable and specific facts, the court must consider the totality of the circumstances, that is, the entire picture. Arvizu, ___ U.S. at ___, 122 S. Ct. at 750; Simpson, 968 S.W.2d at 783.

Defendant relies upon State v. Binette, 33 S.W.3d 215 (Tenn. 2000). In Binette the court first concluded the trial court's findings were based exclusively on a videotape of the defendant's driving prior to the stop; therefore, the appellate court's standard of review was *de novo* without a presumption of correctness. *Id*. at 217. The court then found, based upon its review of the videotape, that defendant's alleged "weaving" was entirely within his lane; it was not exaggerated; and the defendant only "touched the center line" on two occasions. *Id*. at 219. The court then

concluded that the totality of the circumstances did not provide a reasonable suspicion of a criminal offense; thus, the investigatory stop was improper. *Id.* at 219-20.

We believe the case at bar to be distinguishable from Binette. First, the trial court did not rely upon a videotape, but rather upon the testimony of witnesses. Our standard of review is, therefore, whether the evidence preponderates against the findings of the trial court; the prevailing party is entitled to the strongest legitimate view of the evidence as well as all reasonable inferences that may be drawn from that evidence. *Id.* at 217 (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Second, the officer testified the defendant not only weaved within his lane, but also "crossed over the center line" on two separate occasions. Under these circumstances, the trial court did not err in finding reasonable suspicion to justify the investigatory stop.

## CONCLUSION

For all of these reasons, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-5-