# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. ROBBIE DAVIDSON

**Direct Appeal from the Criminal Court for Pickett County**
**No. 448  Honorable Leon C. Burns, Jr., Trial Judge**

---

**No. M1997-00130-CCA-R3-CD - Decided May 12, 2000**

---

A jury found the defendant guilty of two second degree murders, and he received two consecutive 25 year sentences. Identification of the bodies and cause of death were difficult because the bodies had been burned. Sufficient evidence supports the convictions and the sentences. Any irregularity in impaneling the jury did not result in prejudice to this defendant. The trial court did not err in admitting a witness' previous preliminary hearing testimony, which contained an audiotaped interview of that witness who experienced memory failure at trial. The trial court also correctly allowed the state to play an audiotaped interview of another witness, offered in response to the defendant's allegations that the witness had been coerced at the interview. The judgment from the trial court is affirmed.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WILLIAMS, J., delivered the opinion of the court, in which PEAY and WELLES, JJ., joined.

Jerred A. Creasy, Nashville, Tennessee, for the appellant, Robbie Davidson, on appeal. John H. Little, Livingston, Tennessee, for the appellant at trial.

Paul G. Summers, Attorney General & Reporter, Kim R. Helper, Assistant Attorney General, William Edward Gibson, District Attorney General, and Owen G. Burnett, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The defendant, Robbie Davidson, appeals from Pickett County convictions of two counts of second degree murder and two 25 year sentences, imposed consecutively.[1] He asserts that:
    (1) The evidence was insufficient to support the convictions;
    (2) the impaneled jury was not fair and impartial;
    (3) the trial court erroneously admitted certain evidence; and

---

[1] These sentences are also consecutive to a prior 12 year sentence, for an effective sentence of 62 years. The defendant was sentenced as a Range I offender in the instant case.

(4) the trial court improperly sentenced the defendant.

After review, we affirm the judgment, convictions, and sentences from the trial court.

## FACTS

From a jury verdict of guilty, we review the facts in a light most favorable to the state. On August 29, 1995, employees of the Pickett County Highway Department found a burned vehicle in an area known as Half Moon Hole. The vehicle, a two-door Buick Riviera registered to Bethel Ray Hill, Sr., contained the skeletal remains of one male and one female.

Faculty members of the Anthropology Department of the University of Tennessee at Knoxville testified to the identity of the two skeletal remains. A dental record examination positively identified one of the skeletal remains as those of a female, Lorraine Whittenburg. This victim's mother also identified jewelry found within those remains belonging to Lorraine Whittenburg. Although not as definitive as the identification of the female victim, evidence from an ankle bone and dental records revealed that the other skeletal remains were those of a male, Bud Hill.

The forensic anthropologists testified that intense heat had altered both remains and thus precluded positive determination of the causes of death. They could determine, however, that the male's body had been inverted, with his feet toward the rear of the vehicle. The female's head was in the floor of the passenger side. The position of the bodies would have allowed one to drive the vehicle with the bodies in the front seat. The male's skull had been shattered, whereas the female's was not. Expert testimony established that this shattering could have resulted from internal explosion, due to the extreme heat. This shattering was also consistent, however, with a gunshot wound to the head, and forensic examination identified beveling, consistent with bullet entry, on fragments of that particular skull. The examination also identified two radioplasties, or artifacts indicative of lead or other metal from a projectile entering the male's skull.

Witnesses established that both victims were with the defendant on August 27, 1995, the last day either victim was seen alive. Donna Logan testified that at approximately 7:45 p.m. she left Lorraine Whittenburg, Bud Hill, and the defendant. Bethel Ray Hill, Sr., the male victim's father, testified that the defendant purchased a 30-06 rifle, with some live cartridges, from Bud Hill at the Hill's residence earlier that day. Hill, Sr., went inside his home, leaving Bud Hill with the defendant at Hill, Sr.'s vehicle. Hill, Sr., never saw his son again.

Ricky Davidson, the defendant's young nephew, testified that on August 27, 1995, he was visiting at his grandfather's home. The defendant lived with his father, Ricky's grandfather. While there, Ricky overheard the defendant and an unidentified man talking about a shooting. Ricky thought that the men were arguing. Later that night, after returning home, Ricky testified that he overheard his grandfather telling his father that he, the grandfather, had heard two gunshots and that the defendant had apparently shot "at them people." On cross examination, Ricky indicated that the officers had pressured him regarding his statement to the police. In response to the allegations of

coercion, the state successfully moved to play the tape-recording of that interview for the jury. Deputy Nicholas, whose wife is distantly related to the Davidsons, testified that he talked with Ricky before the interview to calm and comfort him.

At a jury-out hearing, Cosby Davidson, the defendant's father, told the judge, under oath, that he had no recollection of an October 11, 1995, interview with investigators. Cosby further failed to recall his preliminary hearing testimony on November 16, 1995. The state produced a transcript of the hearing, and Cosby said that he could not read it. The trial court allowed the state to play a videotape of the preliminary hearing. This videotape contained an audiotape of the October 11 interview. At the preliminary hearing, after hearing the tape, Cosby affirmed its contents.

In the audiotaped interview played for the jury, Cosby stated that the defendant, a second man, and a woman were at Cosby's residence on a Sunday night. Cosby stated that the killings took place near his residence and that he heard two shots. Cosby also said he went out on his porch and saw the defendant load the bodies in the car. During the interview, he identified the male victim as Bud Hill. Cosby then stated he went to Billy Davidson's residence and told Billy about the shooting.

## ANALYSIS

We address the evidentiary issues asserted by the defendant before discussing the sufficiency of the evidence and the issues regarding a fair and impartial jury and sentencing.

### Admission of Evidence

### Cosby Davidson

At trial, Cosby Davidson, the defendant's father, recalled neither his October 11 interview with investigators nor his preliminary hearing testimony. Therefore, the trial court admitted a tape of the preliminary hearing examination that comprised a recorded statement of the interview as prior testimony from an unavailable witness. See Tenn. R. Evid. 804(a)(3),(b)(1). The defendant asserts that the admission of the tape of the preliminary hearing constituted error. The defendant specifically asserts that:

(1) Cosby's availability at trial precluded admissibility through Rule 804(b)(1);

(2) the witness was not questioned about his memory of the events contained in the October 11 interview tape; and

(3) the recorded statement was, at best, a prior inconsistent statement, with use limited to impeachment, and as such should not have been passed as an exhibit to the jury.

Former testimony of unavailable witness is not excluded from evidence by the hearsay rule if:

1. The testimony was given at another hearing on the same or on a different matter; and

2. The party against whom the evidence is offered had both opportunity and motive,

-3-

similar to that at the case in controversy, to develop the proffered testimony. See Tenn. R. Evid. 804(b)(1); State v. Bilbrey, 912 S.W.2d 187, 188 (Tenn. Crim. App. 1995). The definition of "unavailable witness" includes one who "demonstrates a lack of memory of the subject matter of the declarant's statement." See Tenn. R. Evid. 804(a)(3).

In the instant case, the witness testified on direct that he remembered nothing of the homicides, the interview, or the preliminary hearing. At the preliminary hearing, the defendant had opportunity and motive to cross-examine Cosby. See Tenn. R. Evid. 804(b)(1). Therefore, the testimony from the preliminary hearing, and the videotape of that hearing, is admissible.

Comprised within the prior testimony is the tape recording of the interview with officers. At that preliminary hearing, the witness heard and adopted the substance of the tape:

A . . . record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly,

See Tenn. R. Evid. 803(5). Such evidence therefore, would not be barred as hearsay.

The defendant asserts that the recorded statement was admissible only as a prior inconsistent statement with application limited to impeachment. See Tenn. R. Evid. 613. Under Rule 803(5), the admissibility of the audiotaped statement was not limited to impeachment purposes but may be substantive evidence. See Mitchell v. Archibald, 971 S.W.2d 25, 28 (Tenn. Ct. App. 1998). That evidence of the interview, however, should have been read into evidence and not entered as an exhibit. See Tenn. R. Evid. 803(5). We conclude that this error was harmless. See Tenn. R. Crim. P. 52(a); State v. Terry Dean Sneed, No. 03C01-9702-CR-00076 (Tenn. Crim. App. filed Nov. 5, 1998, at Knoxville).

**Ricky Davidson**

At trial, the state played a recorded statement of Ricky Davidson after the defense repeatedly asserted that the witness was coerced and intimidated into making statements. The defendant asserts error because in the recorded statement Ricky repeated his grandfather's statement to the witness's father. The defendant asserts that this constitutes hearsay within hearsay, not covered by any exception. Further, the defendant states that the probative value of those tapes, restricted to impeachment, would not outweigh the extreme unfair prejudicial effect to the defendant when the hearsay portion went to the ultimate issue at trial. Therefore, the defendant argues that Tennessee Rule of Evidence 403 should have excluded that evidence from trial.

We note that the record does not contain contemporaneous objection by the defendant at trial. That issue would therefore generally be waived. See Tenn. R. App. Pro. 36(a). However, a prior consistent statement is admissible when witness testimony is assailed or seriously questioned such that the witness's credibility needs "shoring up." See State v. Benton, 759 S.W.2d 427, 433-34 (Tenn. Crim. App. 1988). Such an impeaching attack may occur during cross-examination. See State v. Meeks, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993). Further, the trial court instructed

the jury before and after the playing of that tape that it was not substantive evidence and addressed only the credibility of the witness, see State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982), and we presume the jury followed the instructions given them by the trial court, see State v. Walker, 910 S.W.2d 381, 396-97 (Tenn. 1995). This issue is therefore without merit.

## Sufficiency of Evidence

We now review the evidence from the jury verdict, consistent with our well-established standard, in a light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). This Court neither reweighs nor re-evaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Id. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was with the victims the last time either was known to be alive. Cosby, the defendant's father, testified that he heard two shots and saw the defendant with the bodies. Ricky, the defendant's nephew, testified that Cosby told Billy about the shooting. The bodies were positioned such that one could drive the vehicle with the bodies, consistent with the theory that the victims were slain at the farm and driven to their location site. Although the remains were greatly damaged by the fire, evidence was provided consistent with Hill's demise from a gunshot. Therefore, the evidence was sufficient for the jury's finding guilty beyond a reasonable doubt, and the defendant does not satisfy the burden required for our overturning the verdicts. This issue is therefore without merit.

## Fair and Impartial Jury

Under several theories, the defendant next asserts that he was denied his constitutional right to a fair and impartial jury. See State v. Akins, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993). Specifically, he asserts that the trial court:
    (1) did not strictly comply with statutory requirements for jury selection procedure;
    (2) denied his motion for change of venue;
    (3) denied his motion for individual voir dire;
    (4) allowed the state too many peremptory challenges;
    (5) admitted jurors who were likely not fair and impartial; and
    (6) as a consequence of the enumerated assertions in their totality, committed cumulative error that entitles the defendant to a new trial.

## Selection of the Jury Venire

Tennessee Code Annotated § 22-2-304 requires that either a child, less than ten years of age, or a securely blindfolded person draw the names of prospective jurors from the jury box. The trial court conceded that these statutory guidelines were not strictly followed: The commissioner drawing names was not blindfolded. The trial court concluded, however, that the deviation did not constitute prejudice.

Under circumstances where a "trial court flagrantly, unnecessarily, and substantially deviated from the statutes for selecting a special jury venire," proof of actual prejudice may be unnecessary. See State v. Bondurant, 4 S.W.3d 662, 666-70 (Tenn. 1999); see also State v. Lynn, 924 S.W.2d 892 (Tenn. 1998). Generally, however, absent a showing of fraud or prejudice, the deviations render neither the jury nor it's verdict illegal. See State v. Boyd, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992); see also Flynn v. State, 313 S.W.2d 248 (Tenn. 1958) (Absent fraud or prejudice, departure from the manner prescribed does not render that body illegal nor its acts invalid.). This issue is without merit.

## Change of Venue

In his pretrial motion for change of venue, the defendant claimed that a fair trial was impossible because of "undue excitement" against him. In support of this motion, the defendant filed three affidavits, all by relatives of the defendant, and all asserting that the small size of the community, the local media coverage, and the relative prominence of Whittenburg, because of her relation to a former politician in that area, precluded a fair trial.

Apparently, the trial court reserved ruling on the original pretrial hearing for change of venue and advised the parties during jury selection that the motion was still under advisement. Although we find neither transcript of the hearing nor other discussion of the trial court's ruling in the record, the motion was apparently denied. Therefore, the defendant's failure to properly preserve a record for our review constitutes waiver of the issue. See Tenn. R. App. Pro. 24(b); State v. Matthews, 805 S.W.2d 776 (Tenn. Crim. App. 1990). Nevertheless, the defendant's argument fails on the merits.

Absent a clear abuse of discretion by the trial court in this matter, this Court will not interfere with the ruling. See State v. Howell, 868 S.W.2d 238, 249 (Tenn. 1993); Adkins v. State, 911 S.W.2d 334, 343 (Tenn. Crim. App. 1994). "Prejudice will not be presumed on the mere showing that there was considerable pre-trial publicity," and the accused must demonstrate that the jurors were biased by pre-trial publicity. See Adkins, 911 S.W.2d at 343. The defendant fails to establish prejudice such that we can find a clear abuse of discretion by the trial court's decision regarding venire.

## Individual Voir Dire

The defendant argues that the trial court erred by refusing his requests for individual sequestered voir dire. The decisions regarding voir dire rests within the sound discretion of the trial

court, and individually sequested voir dire is mandated only when a significant possibility exists that a juror has been exposed to potentially prejudicial matters. See State v. Howell, 868 S.W.2d 238, 247 (Tenn. 1993).

The trial judge stated that individual voir dire would be allowed on a case-by-case basis, as needed, and noted that opportunity for prejudice would be limited because only two panels of prospective jurors would be in the courtroom at a given time. The defendant asserts that three jurors stated that they believed that a murder had occurred. The defendant asserts error both in refusing to remove these jurors for cause and in allowing the other potential jurors to hear their opinions. The trial court denied the defendant's motion to have these three jurors dismissed for cause, and we address those persons' statements as jurors in subsequent analysis.

We do not conclude that other jurors were thereby exposed to prejudicial material, especially in light of practically all the jurors' awareness that homicides were suspected in the case and that the trial judge instructed the prospective jurors that the state bore the burden of establishing that homicides had actually occurred. The defendant identifies nothing in the record as prejudicial or inflammatory, see State v. Coe, 655 S.W.2d 903, 911 (Tenn. 1983), and the issue is therefore without merit.

### Peremptory Challenges

Both the state and the defendant used all their allotted eight peremptory challenges. The defendant alleges that the trial court committed plain error by granting the state eight peremptory challenges, because Tennessee Rule of Criminal Procedure 24 allowed the state only four such challenges. These challenges, alleges the defendant, were "to get to" Chris Crabtree. Crabtree, who had worked with the victim's brother, stated that he would find it difficult to set aside a preconceived opinion about the case.

We consider this assertion on two levels: the alleged extra challenges and the actual presence of Crabtree. First, we note a lack of contemporaneous objection to this order, constituting waiver of the issue. See Tenn. R. App. Pro. 36(a). Nonetheless, Tennessee Code Annotated § 40-18-118 establishes that "[n]otwithstanding any other provision of law or rules of court to the contrary, in any case. . . [i]f the offense charged is punishable by imprisonment by more than one (1) year, but not by death, each defendant is entitled to eight (8) peremptory challenges, and the state is entitled to eight (8) peremptory challenges for each defendant." (Tennessee Rule Criminal Procedure 24(d) was subsequently amended accordingly with that statute.). See Tenn. R. Crim. P. 24(d) (advisory comm'n. comment to 1997 amendment). The state sought life imprisonment, not the death penalty, for the original charges of first degree murder. Thus, an appropriate number of challenges was allowed. We address the specific issue of Crabtree's status as a juror in subsequent analysis.

### Unfair and Impartial Jurors

As previously mentioned, the defendant identified three jurors who stated that they had some opinions regarding the case. Crabtree worked with the defendant's brother approximately four years

before the trial. He acknowledged that he had heard rumors about the case and, although he might feel it "hard to," he could set aside rumors that he had heard. He would find it difficult to set aside a preconceived notion regarding the case, but, in response to the court's specific questions, stated that he would be able to disregard prior acquaintances and opinions and decide the case only on the proof, thus providing each side with a fair trial.

Connie Hargis stated that she had formed an opinion that a homicide had actually occurred, as did Jackie Jones and Steven Bilbery. Hargis was dismissed by the court. Bilbery stated to the court that he could set aside his impressions and evaluate the case on the evidence. Jones stated that he understood and agreed with the legal principle that unless the state proved every element of the case beyond a reasonable doubt he would be required to vote for acquittal. Further, he understood and agreed with the principle that an accused was presumed innocent until proven guilty. Finally, he would not "guess" an accused into guilt and subsequent confinement. Because the jurors stated that they would decide the case solely on the proof and would dispense with personal opinions, we find no error.

## Cumulative Error

In view of the preceding conclusions, we do not find cumulative error mandating a new trial in the jury selection procedure.

## Sentencing

The defendant asserts that the trial court erroneously imposed consecutive sentences for the two second degree murder convictions. When an accused challenges the length of manner of service of a sentence, this Court reviews the record de novo "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is contingent on the record indicating both the lower court's reasons for arriving at a sentencing decision and compliance with the statutory sentencing guidelines and principles. See State v. Wilkerson, 905 S.W.2d 933, 934 (Tenn. 1995). The appellant bears the burden of showing that the sentencing was improper. See Tenn. Code Ann. § 40-35-401(d) (sentencing comm'n comments); State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996). The following considerations apply: (1) the evidence received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to the sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any statutory mitigating or enhancement factors; (6) any statement made by the accused on his own behalf; and (7) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The defendant correctly asserts that the trial court did not find that incarceration of the defendant was necessary for the protection of the community, a finding required by the Tennessee Supreme Court for imposing consecutive sentencing based on a defendant's status as a "dangerous offender." See Tenn. Code Ann. § 40-35-115(b)(4); State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

We note the defendant's extensive conviction record:

(1) Three counts of aggravated assault and one count of reckless endangerment in May, 1995;

(2) vandalism and public drunkenness in 1992;

(3) driving under the influence, driving on revoked, and destruction of court property in March 1988;

(4) public intoxication in April 1987;

(5) driving on suspended license in September 1988;

(6) carrying a weapon for the purpose of going armed in 1984;

(7) reckless driving and driving under the influence in 1985; and

(8) concealing stolen property in 1990.

The 1995 aggravated assault charges resulted from the defendant's "shoot-out" with Pickett County Sheriff's Office deputies, and the defendant was on probation for those convictions when he committed the instant felonies.

Therefore, the record supports consecutive sentencing on two bases: (1) an extensive criminal record; and (2) the defendant committed the instant offenses while on probation. See Tenn. Code Ann. § 40-35-115(b)(2),(6). Either of these conditions allows consecutive sentencing. Further, neither of these factors requires an explicit finding of necessity to protect the community. See State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999). Therefore, we find no error regarding the consecutive sentencing.

## CONCLUSION

We affirm the judgment and sentences from the trial court.